JOHN RASP, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

FILED MAY 1, 1925.   No. 24659.

1.  Municipal Corporations: ISSUANCE OF BONDS.   Section 3610, Comp. St. 1922, construed, and *held* to confer power upon metro-

politan cities to issue bonds to secure funds with which to pay for lands condemned for parkways, when duly authorized by a vote of the electors.

2. ———: ———: MAJORITY VOTE. Under that section a majority of votes cast on the proposition is sufficient to carry the bonds.

3. ———: ———. An instruction contained in the ordinance submitting the proposition to the electors to the canvassing officer to certify the bonds carried in case 60 per cent. of the votes are in the affirmative, when the statute required a majority only, will not invalidate the election and will be treated as surplusage, as the duty of such officer is to certify according to law.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. Affirmed.

John P. Breen, for appellant.

Dana B. Van Dusen, contra.

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EVANS, JJ., REDICK and SHEPHERD, District Judges.

PER CURIAM.

The question involved in this case is the validity of certain bonds issued by the city of Omaha to pay damages assessed in proceedings in eminent domain for the condemnation of certain lands for parkways outside the corporate limits of the city. The action is to enjoin the sale of the bonds, and, the injunction having been denied and case dismissed by the district court, plaintiff appeals.

Our decision rests upon the proper construction of two sections of the charter of metropolitan cities, the relevant portions of which are as follows:

"The city council may purchase or acquire by the exercise of the power of eminent domain, in this section granted, private property * * * for the purpose and uses in this section specified.

"(1) For streets, alleys, avenues, parks, parkways, playgrounds, boulevards, sewers, public squares, market-places,

Rasp v. City of Omaha.

and for other needed public uses or purposes authorized by this act, and for the purpose of adding to, enlarging, widening or extending any of the foregoing named." Comp. St. 1922, sec. 3610.

It is then provided that the power may be exercised within the limits of the city or within 75 miles thereof. After requiring an ordinance declaring the necessity of the appropriation, the appointment of appraisers to assess the damages and report thereof to the city council, it provides:

"If the award is confirmed it shall be paid as in this act provided, but, if rejected, proceedings anew. may be commenced."

The next paragraph authorizes the city council, in cases where the damages do not exceed $100,000, to confirm the report, levy special taxes to the extent that any properties are specially benefited by the improvement, and issue bonds of the city for "the excess of the costs of the improvement over the fund provided by special assessment." By the next paragraph, in cases where the damages exceed $100,000, the council is required to appoint a committee to determine the amount which may be assessed upon property specially benefited, and the paragraph then proceeds:

"If the amount (special benefits) so determined and found and finally approved does not equal or exceed 90 per cent. of the amount of the appraisal as reported and tentatively approved by the council, then such proceedings shall be abandoned, unless and until authority has been obtained from the electors to issue bonds to pay the excess of the costs of the improvements, as determined by the appraisal, over the amount which may be assessed as special benefits against the property specially benefited, as determined by the approved report of the committee.

"Authority to submit such proposition to the electors is hereby granted either at a general city election or a special election called for that purpose, as in the act provided. Tentative approval of the appraisal and awards shall not be binding upon the city unless the electors by the majority vote of those voting thereon ratify the same and authorize

Rasp v. City of Omaha.

the issuance of bonds to pay the excess of costs of the im-
provement over the amount which may be raised by special
assessments.

"The proposition to be voted upon shall be for ratification
of the appraisal and award tentatively made by the council
and the issuance of bonds to pay the difference between the
amount of the appraisal of damages and the amount which
may be raised by special assessments. Both the amount
of the appraisal of damages and the approved amount found
by the committee which may be raised by special assessment
shall be stated upon the ballot in connection with the propo-
sition in such a manner as to advise the voter of the need
of the amount of bonds proposed to be issued.

"If the proposition to issue bonds is authorized by the
electors, as in this act provided, the council may issue bonds
in the amount and for the purpose so authorized and it shall
levy special taxes upon the property specially benefited, and
to the extent to which specially benefited, for the purpose of
paying the remaining balance of the appraisal of damages."

The next paragraph permits the council to issue bonds
without an election in case the benefits exceed 90 per cent.
of the cost of the improvement.

It appears from the record that the city took all the proper
and necessary steps to condemn the property, and the dam-
ages were reported at $242,000. Thereupon a committee
was appointed by the council to determine the amount which
might be raised by special assessment of property benefited,
and the committee reported that no property was specially
benefited by the improvement, and therefore no special as-
sessments could be levied. Thereupon the city council sub-
mitted to the electors the question of the issuance of bonds
in the sum of $242,000 to pay the damages for the property
taken. The bonds were carried by a majority of the vote
cast, but less than 60 per cent. of the vote (which presents
a question to be discussed later), and thereupon the bonds
in the question were issued.

The plaintiff's first contention is that, under these pro-
visions as above quoted, no authority exists in the city

Rasp v. City of Omaha.

council to issue bonds except for an excess of the damages over and above an amount which may be assessed upon property specially benefited. If this contention is to be upheld, the city would be without the power of eminent domain in any case which does not admit of special assessment for benefits; for without the right to issue bonds the power would be practically useless. We do not think the sections in question will bear such construction. It will be noted that the section confers upon the city the power of eminent domain, both for improvements which may be paid for in whole or in part by special assessment and for improvements to which the principles governing special assessments have no application whatever, to wit, "market-places, and for other needed public uses or purposes," which includes a city hall, city jail, hospital, library, and many others not enumerated. While ordinarily grants of power to municipal corporations are to be strictly construed, an intention of the legislature to so cripple the authorities of metropolitan cities in the performance of absolutely necessary public duties is not to be inferred, by construction, from indefinite or doubtful expressions in the statute, but only when the legislative intent is stated in clear and positive language. By the first paragraph and subdivision 1 of section 3610, the full power of eminent domain is granted, and the subsequent provisions where the damages awarded do or do not exceed the sum of $100,000 were inserted, in our view, for the purpose of defining and limiting the power of the council to act without a vote of the people, but not for the purpose of limiting the general powers of eminent domain granted the city by the earlier part of the section. It is true that the word "excess" as applied to figures involves the idea of a comparison between two amounts, but may not one term of the comparison be zero, and therefore $10 is in excess of zero by $10? If one man has nothing and another has a million dollars, is any violence done to either grammar or syntax by the expression "that the latter has so much wealth in excess of the former?" We think appellant's position is hyper-technical, and that,

where, as in the present case, the clear intent of the legislature was to limit the legislative powers of the council in certain cases, the use of such term should not be construed as a limitation upon the power of the electorate to vote bonds to pay for property condemned for a concededly public purpose. The argument *reductio ad absurdum* may not be a very valuable aid to logic, but it would seem, as no minimum is fixed as regards special benefits to be assessed, a finding in good faith of a trivial amount would satisfy the statute, even if appellant's construction be adopted; in fact, it is quite conceivable that only one abutting lot might be specially benefited, *e.g.*, converted from an inside into a corner lot, thus reducing the bond issue by only a few dollars. We think it unnecessary to resort to such niceties, and consider the construction we have adopted the logical one.

Plaintiff's next contention is that 60 per cent. of the votes cast upon the proposition was requisite to authorize the bonds. This contention is based upon section 3527, Comp. St. 1922, which requires "that, whenever the question and proposition of issuing bonds is submitted, it shall require sixty per cent. of the electors voting thereon to carry same, except where in this act it is otherwise provided." The proposition in question is clearly within the exception. In this connection attention is called to the language of the portion of section 3610 last above quoted, "Tentative approval of the appraisal and awards shall not be binding upon the city unless the electors by *the* majority vote of those voting thereon ratify the same," and it is suggested that the use of the article "the" refers to the provision of section 3527 requiring a 60 per cent. vote, but we think the word "majority" has a definite meaning in our institutions and laws, and that the word "the" is evidently used in the same sense as "a."

The ordinance instructed the canvassing officer to certify the proposition "carried" if 60 per cent. of the votes were "yes," whereas, as we have seen, only a majority was required, and plaintiff contends the bonds were invalid for

this reason.   Neither the statute nor any ordinance govern-ing the submission of the question to the electors, so far as we are advised, required any statement on that subject, and it was not a matter material to the elector in determining his vote and may properly be treated as surplusage, as such officer's duty is to certify according to law.   That one pro-vision of an ordinance is void for being in conflict with the statute will not invalidate the entire ordinance; and when the illegal portion does not affect the integrity of the elec-tion, which, in all other respects, is in conformity with law, the election will be sustained.   *Blakey v. City Council of Montgomery*, 144 Ala. 481. See, also, *North v. McMahan*, 26 Okla. 502; *Hamilton v. Village of Detroit*, 83 Minn. 119.

We conclude that the bonds are valid obligations of the city, and that the district court was right in denying the injunction.

AFFIRMED.

Note—See Municipal Corporations, 28 Cyc. pp. 1578, 1588, 1589.