**PIPER v. WILLCUTS, Collector of Internal Revenue.**

**No. 2321.**

District Court, D. Minnesota, Third Division.

Jan. 22, 1932.

Junell, Oakley, Driscoll & Fletcher and Leland W. Scott, all of Minneapolis, Minn., for plaintiff.

M. W. Goldsworthy, Sp. Asst. to U. S. Atty., and Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Herbert E. Carnes, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for defendant.

SANBORN, District Judge.

This cause came on to be tried on the 13th day of November, 1931, upon a stipulation of facts. A jury was waived. At the close of the testimony, each party moved for judgment on the sole ground that the evidence would support no other conclusion, and it was agreed that the party whose motion was denied should have an exception.

From the stipulation of facts it appears that Mr. Piper, the plaintiff, purchased 300 shares of the capital stock of the Minneapolis Artificial Ice Rink, Inc., in the year 1924, for

which he paid $30,000. He held this stock until 1927, when he sold it for $4. He therefore sustained a loss of $29,996, for which he was not compensated by insurance or otherwise. He did not acquire or enter into a contract or option to acquire shares of the capital stock of the Minneapolis Artificial Ice Rink, Inc., within thirty days before or after the sale of the shares purchased. In 1927 he did not sell or exchange any property held by him for more than two years, other than these shares. In his individual income tax return for the calendar year 1927, Mr. Piper deducted from gross income $29,996 as a loss sustained within the calendar year 1927, within the meaning of section 214 (a) (4) and (5) of the Revenue Act of 1926, title 26, USCA, § 955 (a) (4, 5).

The Commissioner of Internal Revenue determined a deficiency in the plaintiff's tax liability for the calendar year 1927 of $1,528.-82, holding that the loss from the sale of the stock in question constituted a "capital net loss" within the meaning of section 208 (a) (6) of the Revenue Act of 1926 (title 26, US CA, § 939 note), and that it was therefore not a proper deduction from the plaintiff's gross income. The computation of the plaintiff's tax liability under section 208 (c) of the Revenue Act of 1926 (26 USCA § 939 note) resulted in the deficiency as determined by the commissioner. Mr. Piper paid the deficiency, and brought this suit to recover the amount paid.

The only question involved is whether the plaintiff's conceded loss is a "capital net loss" within the meaning of section 208 (a) (6) of the Revenue Act of 1926.

The plaintiff contends that the term "capital net loss" contemplates the existence of actual transactions resulting in gain and loss before there can exist the capital net loss or capital net gain of which the statute speaks, and that if actual transactions do not exist resulting in capital gain and loss, a taxpayer is not brought within the provisions of the statute and must compute his tax liability in the ordinary way.

The defendant's position is that any taxpayer who has sustained a "capital loss," as that term is defined in the statute, and who has not derived any capital gain, as therein defined, has, nevertheless, sustained a capital net loss.

Under section 208 (a) (1) of the Revenue Act of 1926 (26 USCA § 939 note), "capital gain" is defined as "taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." The term

"capital loss" is defined (section 208 (a) (2) as "deductible loss resulting from the sale or exchange of capital assets." The term "capital deductions" is defined (section 208 (a) (3) as "such deductions as are allowed by section 214 for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year." The term "capital net gain" is defined (section 208 (a) (5) as "the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain." The term "capital net loss" is defined (section 208 (a) (6) as "the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain."

Apparently the question here involved has never been determined by any court. The plaintiff's theory is that Congress did not intend that if a man received only a gain from the sale of capital assets, that should be regarded as a capital net gain, or, if he sustained only a loss from the sale of capital assets, that should be regarded as a capital net loss.

The purpose of the section in question was to enable taxpayers to dispose of capital assets without having to pay an excessive tax because of the profits realized. In view of the fact that they were permitted to pay a reduced percentage upon such gains, it was thought reasonable that they should not be permitted to take full advantage of losses incurred from the sale of capital assets.

I am unable to say that the construction placed upon the term "capital net loss" by the commissioner in this case is an unreasonable or improper construction. If Mr. Piper during the year 1927 had sold capital assets at a profit to him of $5, he would have had a capital net loss of $29,991; but, if the plaintiff's theory be correct, since he sold no capital assets, he would have the right to deduct his entire loss through the sale of capital assets from his gross income. As a matter of fact, "the excess of the total amount of capital gain over the sum of the capital deductions and capital losses, plus the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain," in Mr. Piper's case was the full amount of the capital loss, because the amount of capital gain was zero.

In Rasp v. City of Omaha et al., 113 Neb. 463, 203 N. W. 588, it was held that the word

"excess" as applied to figures involves the idea of a comparison between two amounts, but that one term of comparison may be zero, and that $10 is in excess of zero by $10.

I find generally in favor of the defendant. Judgment may be entered dismissing this case upon the merits. The plaintiff is allowed an exception to the denial of his motion for judgment on the sole ground that the evidence will support no other conclusion.