**PIPER v. WILLCUTS, Collector of Internal Revenue.**

**No. 9533.**

Circuit Court of Appeals, Eighth Circuit.

April 11, 1933.

Leland W. Scott, of Minneapolis, Minn. (Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., on the brief), for appellant.

Eldon O. Hanson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, Sp. Asst. to U. S. Atty., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Herbert E. Carnes, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

The facts in issue in this appeal, as in the trial court, are thus succinctly stated by the trial judge:

"From the stipulation of facts it appears that Mr. Piper, the plaintiff, purchased 300 shares of the capital stock of the Minneapolis Artificial Ice Rink, Inc., in the year 1924, for which he paid $30,000. He held this stock until 1927, when he sold it for $4.00. He therefore sustained a loss of $29,996, for which he was not compensated by insurance or otherwise. He did not acquire nor enter into a contract or option to acquire shares of the capital stock of the Minneapolis Artificial Ice Rink, Inc., within thirty days before or after the sale of the shares purchased. In 1927 he did not sell or exchange any property held by him for more than two years, other than these shares. In his individual income tax return for the calendar year 1927, Mr. Piper deducted from gross income $29,996 as a loss sustained within the calendar year 1927, within the meaning of section 214(a) (4) and (5) of the Revenue Act of 1926, title 26, USCA § 955.

"The Commissioner of Internal Revenue determined a deficiency in the plaintiff's tax liability for the calendar year 1927 of $1,- 528.82, holding that the loss from the sale of the stock in question constituted a 'capital net loss' within the meaning of Section 208 (a) (6) of the Revenue Act of 1926 (title 26, USCA § 939 note), and that it was therefore not a proper deduction from the plaintiff's gross income. The computation of the plaintiff's tax liability under Section 208(c) of the Revenue Act of 1926 resulted in a deficiency as determined by the Commissioner. Mr. Piper paid the deficiency, and brought this suit to recover the amount paid.

■ "The only question involved is whether the plaintiff's conceded loss is a 'capital net loss' within the meaning of Section 208(a) (6) of the Revenue Act of 1926."

There is no dispute as to the facts, and the question presented is purely one of law. The contention of appellant is thus stated: "The capital net loss with which the statute deals can only exist when there have been sales or exchanges of capital assets at both gain and loss resulting in an amount of loss greater than the amount of gain. If there have been sales or exchanges of capital assets at a loss and no sales or exchanges of capital assets at a gain the statute is inapplicable. In such a situation a taxpayer is entitled to the benefit of section 214(a) (4) and (5)."

At the outset it may be well to state some established rules of law which must govern our consideration and disposition of this issue.

■■ It may be conceded that, where in the language of a statute the legislative body's intent clearly appears, it is to be presumed that it said what it meant to say; but courts should construe a statute in such manner as to avoid absurdity or injustice. Echols v. Commissioner (C. C. A. 8) 61 F.(2d) 191. A statute should be reasonably construed to carry out its purposes and objects where the meaning is not perfectly clear. Fidelity National Bank & Trust Co. v. Commissioner (C. C. A. 8) 39 F.(2d) 58.

"A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law." Smythe v. Fiske, 23 Wall. 374, 380, 23 L. Ed. 47.

"The rule of strict construction will not be pressed so far as to reduce a taxing statute to a practical nullity by permitting easy evasion." Carbon Steel Co. v. Lewellyn, 251 U. S. 501, 40 S. Ct. 283, 64 L. Ed. 375.

"The rule that tax laws shall be construed favorably for the taxpayers is not a reason for creating or exaggerating doubts of their meaning." Irwin, Collector, v. Gavit, 268 U. S. 161, 45 S. Ct. 475, 69 L. Ed. 897.

■ The intention of the lawmaker is the law, and must govern where it may be deduced reasonably from the language employed. With this in mind let us examine into the legislative and judicial history of this statute. Burnet v. Harmel, 287 U. S. 103, 108, 53 S. Ct. 74, 77 L. Ed. ——. The pertinent provisions follow:

Section 208, 1926 Revenue Act. Title 26 USCA § 939 note—Capital Gains and Losses. 44 Stat. at L., p. 19.

Section 208. "(a) For the purposes of this chapter—

"(1) The term 'capital gain' means taxable gain from the sale * * * of capital assets consummated after December 31, 1921;

"(2) The term 'capital loss' means deductible loss resulting from the sale or exchange of capital assets;

"(3) The term 'capital deductions' means such deductions as are allowed by section 955 [214] for the purpose of computing net income, and are properly allocable to or chargeable against capital assets sold or exchanged during the taxable year;

"(4) The term 'ordinary deductions' means the deductions allowed by section 955 [214] other than capital losses and capital deductions;

"(5) The term 'capital net gain' means the excess of the total amount of capital gain over the sum of (A) the capital deductions and capital losses, plus (B) the amount, if any, by which the ordinary deductions exceed the gross income computed without including capital gain;

"(6) The term 'capital net loss' means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain. * * *

"(b) In the case of any taxpayer (other than a corporation) who for any taxable year derives a capital net gain, there shall (at the election of the taxpayer) be levied, collected and paid, in lieu of the taxes imposed by sections 951 [210] and 952 [211 of this title], a tax determined as follows:

"A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 951 [210] and 952 [211], and the total tax shall be this amount plus 12½ per centum of the capital net gain.

"(c) In the case of any taxpayer (other than a corporation) who for any taxable year sustains a capital net loss, there shall be levied, collected, and paid, in lieu of the taxes imposed by sections 951 [210] and 952 [211 of this title], a tax determined as follows:

"A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner provided in sections 951 [210] and 952 [211], and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax under this subdivision be less than the taxes imposed by sections 951 [210] and 952 [211] computed without regard to the provisions of this section."

The first legislation upon this specific subject is to be found in section 206 of the Revenue Act of 1921, by the Sixty-seventh Congress, Stat. at L. vol. 42, pp. 232, 233. Without quoting fully, it is sufficient to point out that this act permitted this same reduction of tax upon capital net gains as in the act of 1926 above set out. The provision of the latter act with respect to capital losses was not included in this act of 1921. The purpose of section 206 of the act of 1921 is thus stated in Burnet v. Harmel, 287 U. S. loc. cit. 106, 53 S. Ct. 74, 75, 77 L. Ed. ——: "Before the act of 1921, gains realized from the sale of property were taxed at the same rates as other income, with the result that capital gains, often accruing over long periods of time, were taxed in the year of realization at the high rates resulting from their inclusion in the higher surtax brackets. The provisions of the 1921 Revenue Act for taxing capital gains at a lower rate, re-enacted in 1924 without material change, were adopted to relieve the taxpayer from these excessive tax burdens on gains resulting from a conversion of capital investments, and to remove the deterrent effect of those burdens on such conversions. House Report No. 350, Ways and Means Committee, 67th Cong., 1st Sess. on the Revenue Bill of 1921, p. 10; see Alexander v. King (C. C. A.) 46 F.(2d) 235, 74 A. L. R. 174."

In like manner we seek the intent and purpose of the Revenue Act of 1924, in section 208(a) (26 USCA § 939 note) of which provision was made for the deduction of 12½ per centum of the capital net loss, in computing income, instead of the full amount of said loss as theretofore. In the ascertainment of the intent of Congress and the purpose of the act we are again permitted to resort to legislative history. United States v. Great Northern Ry. Co. (C. C. A. 8) 57 F.(2d) 385; Burnet v. Harmel, supra. When the Revenue Act of 1924 was called up in the House of Representatives of the Sixty-eighth Congress, Mr. Green of Iowa, Chairman of the Ways and Means Committee in charge of the bill, in explaining its provisions and purposes, said: "A very important provision in the bill relates to the allowance for capital losses. It is provided that the amount by which the tax is reduced on account of capital losses shall not exceed 12½ per cent of the losses, and the provision of the existing law, that the tax on the sale or disposition of capital assets shall be limited to 12½ per cent of the gain, is retained."

He then referred to the law of 1921 providing that capital gains should only be taxed at the rate of 12½ per cent., and continued: "Unfortunately, we were not able to include in the law, by reason of opposition in the other House, a similar provision with reference to capital losses. It was included in the House bill, but was taken out in the Senate. As a result we have found that, in the language of the Secretary of the Treasury, the Government is continually being 'whipsawed,' because the large investors take their profits only when they really need them, but always take their losses and get full credit.

They do that because, as the matter stands now, there is only a 12½ per cent tax on the gains, and they get full credit for the losses. We have therefore inserted in this bill provisions similar to those contained in the amendment to the revenue act which passed the House last summer, providing that capital gains and capital losses shall both be placed on the same basis; that capital gains shall be taxed at 12½ per cent, at the election of the taxpayer, and that capital losses shall only receive an allowance for deduction at the rate of 12½ per cent. I really could imagine nothing that is fairer, and if this provision is retained in the bill, and I intend it shall be if I am able to keep it there, it will result in the addition of a large amount of revenue to the Government out of which it is now being defeated, and sometimes in a very improper manner. I want to say in this connection that even as matters stand the government is getting far more revenue than it would if sales of capital assets were taxed at the full rate." Vol. 65 Congressional Record, Part 3, 68th Congress, 1st Session, page 2428.

█ The legislative intent and purpose is thus made clear, and should be preserved in construction if the language of the act permits. The pertinent provisions of the law of 1924 have been re-enacted in the Acts of 1926, 1928, and 1932. Section 208(c) of the Revenue Act of 1926 (26 USCA § 939 note) governs here.

The Commissioner of Internal Revenue and the Board of Tax Appeals have consistently construed these revenue acts in conformity with the contention of the government and the decision of the trial court in the instant case. Dahlinger v. Commissioner, 20 B. T. A. 176; Gilbert and Chase, Petitioners, v. Commissioner, 21 B. T. A. 1245; Elkins v. Commissioner, 24 B. T. A. 572. The case of Nicoll v. Commissioner, 16 B. T. A. 868, upon which appellant places some reliance is, rather, an indirect ruling in appellee's favor. The first syllabus holds that: "The term 'capital net gain,' as used in subdivision (b) of section 206 of the Revenue Act of 1921 [42 Stat. 233], comprehends the net result of all transactions during any taxable year, involving the sale or exchange of capital assets, provided such result represents a net gain to the taxpayer."

█ Long established departmental practice is entitled to much consideration. Commissioner v. Liberty National Bank (C. C. A. 10) 58 F.(2d) 57; Fidelity National Bank & Trust Company v. Commissioner (C. C. A. 8) 39 F.(2d) 58, loc. cit. 61.

Much of the argument of counsel for appellant is based upon the use of the word "net" in describing capital gains and losses. It is contended that without exchanges of capital assets at a gain, there can be no net capital loss over gain within the meaning of section 208(c). The infirmity of this contention appears upon examination of the terms of the 1921 Revenue Act, in which no provision is made for capital loss deductions. Nevertheless, the capital gains dealt with are described as capital "net" gains, which mean "the excess of the total amount of capital gain over the sum of the capital deductions and capital losses"; and the reduced percentage of taxation was allowed whether or not there had been any capital loss due to the exchange of capital assets. So, under the act of 1926, "the term 'capital net loss' means the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain"—if any. If there is no such capital gain, the greater the capital loss. Rasp v. City of Omaha et al., 113 Neb. 463, 203 N. W. 588. Of course the act, in providing for these reduced taxes and deductions must, in terms, contemplate the striking of a balance if contemporaneous gains and losses exist. It is to be observed that there are other factors in the computation, to wit, capital and ordinary deductions in arriving at the net gain or loss. The term "net" has no significance of the nature urged by appellant. This case has been argued as depending entirely upon section 208 of the act of 1926 (26 USCA § 939 note). It is pertinent also to consider section 206(a) (2) of the same title. 44 Stat. at L. 17 (26 USCA § 937). Under the heading "net losses" we find:

Sec. 206 (a). "As used in this section the term 'net loss' means the excess of the deductions allowed by section 955 [214] or 986 [234] of this title over the gross income, with the following exceptions and limitations: * * *

"(2) In the case of a taxpayer other than a corporation, deductions for capital losses otherwise allowed by law shall be allowed only to the extent of the capital gains."

There were no capital gains in this year.

The Commissioner of Internal Revenue determined a deficiency in the plaintiff's tax liability for the year 1927 of $1,528.82, the computation being made under section 208 (c) of the Revenue Act of 1926 (26 USCA

§ 939 note). His action was sustained by the trial court. The judgment was correct in any aspect of the case and, accordingly, is affirmed.