## UNITED STATES *v.* PLEASANTS.

No. 169.   Argued December 5, 1938.—Decided January 3, 1939.

*Mr. Paul A. Freund,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Mr. Sewall Key* were on the brief, for the United States.

*Mr. Frederick Schwertner,* with whom *Mr. George H. Warrington* was on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. Henry S. Drinker, Jr.* and *Frederick E. S. Morrison* on behalf of John E. Zimmermann, and by *Mr. Oscar P. Mast* on behalf of Howard Heinz, in support of respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The question is whether the 15 per centum allowed as a deduction for charitable contributions under § 23 (n) of

the Revenue Act of 1932 is to be calculated on the taxpayer's net income computed without regard to a capital net loss as to which special provision is made by § 101 (b).

Section 23 (n) provides that in computing net income there shall be allowed as a deduction from gross income—

"In the case of an individual, contributions or gifts made within the taxable year to or for the use of: . . . to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection." 47 Stat. 181–182.

Respondent in 1932 made charitable contributions to the amount of $3496. His net income, irrespective of a capital net loss, was determined by the Commissioner to be $94,963.52. Upon that net income the Commissioner assessed the normal tax and surtax at the rates prescribed by §§ 11 and 12.[1] Respondent contended that this was his net income as described in § 23 (n) and that as his charitable contributions were less than 15 per centum of that amount they were deductible in full in determining his normal tax and surtax. The Commissioner refused to allow the deduction.

The taxpayer had sustained a "capital net loss," as defined in § 101(c)(6), of $154,921.98. The Commissioner ruled that "Since the capital loss of $154,921.98 is in excess of adjusted· ordinary net income of $94,963.52

---

[1] These sections provide:

"Sec. 11. *Normal Tax on Individuals.*—

"There shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax equal to the sum of the following: . . .

"Sec. 12. *Surtax on Individuals.*—

"(a) *Rates of Surtax.*—There shall be levied, collected, and paid for each taxable year upon the net income of every individual a surtax as follows: . . ." 47 Stat. 174.

(without contributions) there is no net income against which to make a deduction for contributions."

Having paid the tax assessed by the Commissioner upon that theory, respondent filed his claim for a refund and on its rejection brought this suit in the Court of Claims. Judgment was rendered in his favor. 22 F. Supp. 964. Because of an asserted conflict with decisions of Circuit Courts of Appeals [2] and with our ruling in *Helvering* v. *Bliss*, 293 U. S. 144, certiorari was granted. October 10, 1938.

"Capital net gains" and "capital net losses" of individual taxpayers are the subject of special treatment under § 101. In the case of a "capital net gain," there is to be levied, at the election of the taxpayer, and in lieu of all other taxes imposed by the income tax title, a tax of 12½ per centum of the capital net gain, to be added to the tax computed upon the basis of the "ordinary net income." § 101(a). In the case of a "capital net loss," § 101(b) provides for a tax to be determined, also in lieu of other income taxes but irrespective of any election by the taxpayer, as follows:

"a partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section."

Section 101(c)(6) defines "capital net loss" as "the excess of the sum of the capital losses plus the capital deductions over the total amount of capital gain."

---

[2] *Avery* v. *Commissioner*, C. C. A. 7th, 84 F. 2d 905; *Lockhart* v. *Commissioner*, C. C. A. 3d, 89 F. 2d 143; *Heinz* v. *Commissioner*, C. C. A. 3d, 94 F. 2d 832.

Section 101(c)(7) defines "ordinary net income" as "the net income, computed in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions."

There is no doubt as to the purpose of this provision as to capital net losses, which was first introduced in the Revenue Act of 1924.[3] Prior to that time, and under the Revenue Act of 1921, capital losses were to be deducted from capital gains in the process of determining the "capital net gain."[4] If capital deductions and capital losses were in excess of the capital gain, or if there were capital losses in the absence of capital gain, such losses were deductible as ordinary losses. We are told that the opportunity to minimize taxes by the practice of taking capital losses to offset ordinary net income constituted a particularly serious problem after the Act of 1921, which reduced the rate of tax on capital net gains. The results to the Treasury of that method of treating capital losses led to the adoption in the Act of 1924 of the plan for subjecting capital net losses to a limited rate in order to protect the revenues,[5] a plan which was continued in the Revenue Acts of 1926, 1928, and 1932.[6]

It will be observed that the provision for the limitation with respect to a capital net loss under § 101 (b) (unlike the provision in § 101 (a) as to a capital net gain) gives no option to the taxpayer.[7] The limitation is explicit and must be followed as written. The limitation applies equally when there is no capital gain and hence nothing to be deducted from capital losses on that score.[8] The

---

[3] Revenue Act of 1924, § 208 (c).

[4] Revenue Act of 1921, § 206 (a) (4).

[5] *Piper* v. *Willcuts*, 64 F. 2d 813, 815, 816; 65th Cong. Rec. 2428; H. Rep. 179, 68th Cong., 1st Sess., p. 20.

[6] Revenue Act of 1926, § 208 (c); 1928, § 101 (b); 1932, § 101 (b).

[7] Regulations 77, Art. 503.

[8] See *Piper* v. *Willcuts*, 64 F. 2d 813, 816; *Hoffman* v. *Commissioner*, 71 F. 2d 929.

limitation is applicable unless, as stated in the last clause of § 101 (b), a greater tax would result from not applying it.[9]   In the instant case there is no question that the limitation does apply and the Commissioner has applied it.

In such a case the statute directs that a partial tax shall be first computed upon the basis of the "ordinary net income" and at the rates and in the manner provided in §§ 11 and 12.[10]   The total tax is then arrived at by deducting $12\frac{1}{2}$ per centum of the capital net loss.   That loss thus figures in the computation of the total tax only by the allowance of an offset to the specified extent against the tax determined apart from the capital losses. Thus, where the limitation is applicable and the offset of $12\frac{1}{2}$ per centum of the capital net loss is allowed accordingly, capital losses are not deductible in determining the taxpayer's net income for the purpose of the normal tax and surtax.   And, as in such case there is no capital gain, the "ordinary net income" under § 101 (b), that is, the net income computed after excluding capital loss and capital deductions, is the only net income upon which a tax is laid.

We have noted that the limitation of § 101(b) is not applicable if the tax, computed without regard to that section, would be greater.   The latter method of computation brings out the distinction clearly.   For in that method the capital net loss is deducted from the ordinary net income in order to arrive at the total net income for the purpose of applying the normal tax and surtax rates. See illustration in Regulations 77, Article 503.   But where the limitation of § 101(b) governs, because the tax as otherwise computed would not be greater, capital losses are not deducted in determining the net income which is

---

[9] See illustration in Regulations 77, Art. 503.

[10] See Note 1.

to be taxed, but are used only for the purpose of determining the specified offset against the tax on that net income. *Id.*

We are not impressed with the argument based on the provisions of §§ 21, 22 and 23. True, § 21 provides that "net income" means gross income computed under § 22 less the deductions allowed by § 23. Section 22 defines gross income and § 23 provides for deductions, including deductions for losses. But §§ 21, 22 and 23 are not to be construed so as to derogate from the special and explicit provisions of § 101(b). Under the limitation of that section, as we have seen, the taxpayer is not permitted to deduct capital losses so as to reduce the net income subject to tax and his capital losses enter into the computation of his ultimate tax only through the deduction of 12½ per centum of the capital net loss from the tax which is computed upon the net income ascertained irrespective of that loss.

It is in this light that we must decide the particular question here presented as to the meaning of the words "the taxpayer's net income" in § 23(n) providing for a deduction of 15 per centum for charitable contributions. Do these words refer to the taxpayer's net income which under the statutory scheme is actually subject to tax? Or is that net income, although treated as subsisting for the purpose of being taxed, to be regarded as non-existent for the purpose of admitting deductions for contributions? We think that Congress, in the application of the special provision of § 101(b) for an offset in case of a capital net loss, intended to make the taxpayer's net income, ascertained irrespective of that loss, the subject of the tax and that the provision in § 21(n) allowing a deduction for charitable contributions is applicable to that taxable net income.

There is nothing to the contrary in our decision in *Helvering* v. *Bliss, supra.* In that case there was a capi-

tal net gain. The net income of the taxpayer comprehended that net gain as well as his net income otherwise computed. We decided that it was his total net income which was to be regarded as the basis for the allowance under § 23 (n). We found nothing in § 101, which in that application prescribed "merely a method for segregating a portion of that net income for taxation at a special rate," that in any wise altered the right of the taxpayer to take the deduction in accordance with § 23 (n). *Id.*, 150, 151. Here, instead of a capital net gain, we have a capital net loss. There is no gain to be added to the taxpayer's net income otherwise computed, and thus that is the only net income taxable under the statute. To that net income, the provision of § 23 (n) appropriately applies. We observed in the *Bliss* case that the exemption of income devoted to charity and the reduction of the rate of tax on capital gains "were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed." That observation is equally pertinent here.

The administrative construction invoked by the Government has not been of a sufficiently consistent character to afford adequate support for its contention.[11]

We conclude that the Commissioner erred in refusing to permit the deduction sought by respondent for his charitable contributions and that the judgment of the Court of Claims should be

*Affirmed.*

---

[11] See I. T. 2104, III–2 Cum. Bull. 152; Elkins *v.* Commissioner, 24 B. T. A. 572; Livingood *v.* Commissioner, 25 B. T. A. 585, 589; XI–1 Cum. Bull. 9, 33; XI–2 Cum. Bull. 3, 6, 29, 268; Straus *v.* Commissioner, 27 B. T. A. 1116; XIII–2 Cum. Bull. 25, 29, 135.