## PARTEE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8128.

Circuit Court of Appeals, Sixth Circuit.

Sept. 16, 1940.

John D. Martin, Jr., of Memphis, Tenn., for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

This petition challenges a decision of the United States Board of Tax Appeals upholding an asserted income tax deficiency for a taxable year of less than twelve months in which the taxpayer sustained a capital net loss.

Up to and including 1931, petitioner kept his accounts and made his income tax returns upon a calendar year basis. The Commissioner gave him permission to change to a fiscal year basis, his fiscal year to end July 31. This controversy concerns petitioner's tax for the seven-month period from January 1 to July 31, 1932.

The items of income and deduction were stipulated, and the Board found them to be as follows:

1. Cotton business (loss).... ($ 6,625.16)
2. Fruit business .......... 16,840.48
3. Interest ................ 3,150.18
7. Rents ................... 1,168.83
8. Ordinary gains on stock sales ................. 26,436.05
10. Dividends .............. 3,417.19
11. Profit Commodities ..... 2,857.80
12. Total .................. 47,245.37
19. Deduction of taxes...... 1,998.12
    Loss from sale of shares of stock, which were capital assets, as defined by Section 101 (c) (8), and which loss was a deduction from gross income within the meaning of Section 23(e) (2), of the Revenue Act of 1932 [26 U.S.C.A. Int.Rev.Acts pages 505, 490] ................. 49,758.21
20. Net Loss .............. ( 4,510.96)

Petitioner challenges the Board's interpretation of Sections 47(c), 47(d), and 101 (b) of the Revenue Act of 1932, 26 U.S.C. A.Int.Rev.Acts, pages 499, 504,[1] under which his tax was computed.

The Commissioner adjusted petitioner's net income, which was a net loss, and his capital net loss for the seven-month period to an annual basis in the manner prescribed by Section 47(c). The adjusted net income was then deducted from the adjusted capital net loss. From the remainder, adjusted dividends and personal exemption were deducted and a tax computed on the balance. From this partial tax, 12½% of the adjusted capital net loss was deducted and the balance adjusted to a seven-month period. In this manner, a deficiency of $4,537.31 was determined.

The view of the Board was that "ordinary net income" should first be placed upon an annual basis in the manner prescribed by Section 47(c) as to "net income" and a partial tax computed thereon under Section 101(b). The deduction for capital net loss that should then be made could, in the opinion of the Board, be made in either of the following ways: (1) by placing capital net loss on an annual basis, deducting 12½% thereof from the partial tax and readjusting the balance to a seven-month basis; or, (2) readjusting the partial tax to a seven-month basis and deducting therefrom 12½% of the actual

---

[1] Revenue Act of 1932, c. 209, 47 Stat. 169:

"Sec. [§] 47. Returns for a Period of Less Than Twelve Months. * * *

"(c) Income Placed on Annual Basis. If a separate return is made under subsection (a) on account of a change in the accounting period, *the net income*, computed on the basis of the period for which separate return is made, shall be placed on an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in the period for which the separate return is made. The tax shall be such part of the tax computed on such annual basis as the number of months in such period is of twelve months.

"(d) Capital Net Gains and Losses—Earned Income. The Commissioner with the approval of the Secretary shall by regulations prescribe the method of applying the provisions of subsections (b) and (c) (relating to computing income on the basis of a short period, and placing such income on an annual basis) to cases where the taxpayer makes a separate return under subsection (a) on account of

a change in the accounting period, and it appears that for the period for which the return is so made he has derived a capital net gain, or sustained a capital net loss, or received earned income." [No regulation has been promulgated pursuant to Sec. 47 (d).]

"Sec. [§] 101. Capital Net Gains and Losses * * *

"(b) Tax in Case of Capital Net Loss. In the case of any taxpayer, other than a corporation, who for any taxable year sustains a capital net loss (as hereinafter defined in this section), there shall be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: a partial tax shall first be computed upon the basis of the *ordinary net income* at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; but in no case shall the tax of a taxpayer who has sustained a capital net loss be less than the tax computed without regard to the provisions of this section." (Italics ours.)

capital net loss. The Board concluded that petitioner owed a tax of $4,537.31. Inasmuch as this amount had been asserted to be due by the Commissioner, though he used a different method of calculation, the Board upheld the deficiency assessment.

The controversy here results from disagreement as to the meaning of "net income" in Section 47(c).

Petitioner contends that "net income" has been clearly defined in Section 21, 26 U.S.C.A.Int.Rev.Code, § 21(a),[2] and that Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207, forbids reading into the term a different meaning. Since his "net income," so defined, was a loss, petitioner contends that no tax was due under Section 47(c). He asserts that only a computation upon "ordinary net income," under Section 101(b), will produce a deficiency; on that basis, he concedes that a tax of $799.42 would be due.

The Board's conclusion that "ordinary net income" must be placed upon an annual basis rests upon the following reasoning: Section 101(b) requires that a partial tax be computed upon the basis of ordinary net income "at the rates and in the manner as if" Section 101 had not been enacted; subsections (c) and (d) of Section 47, as well as Section 101(b), are applicable and must be read together; for the purpose of computation of the partial tax required by Section 101(b), "ordinary net income" becomes, in effect, "net income," which must be placed upon an annual basis, as prescribed by Section 47(c), in order to compute a tax "at the rates and in the manner as if" Section 101 had not been enacted.

In the brief filed on behalf of the Commissioner, it is urged that the Board's view that "net income" in Section 47(c) excludes the item of capital net loss is required by the Supreme Court's decision in United States v. Pleasants, 305 U.S. 357,

59 S.Ct. 281, 83 L.Ed. 217, in which it was held that capital net loss is not deducted in computing "net income," as used in Section 23(n) of the Revenue Act of 1932, 26 U.S. C.A.Int.Rev.Acts, page 491.[3]

The reasoning urged in support of the Board's interpretation of "net income" in Section 47(c) would, in the light of the decision in United States v. Pleasants, supra, be persuasive if Section 47(d) had not been enacted.

If the construction contended for by the Commissioner had been contemplated by Congress, the passage of Section 47(d),—or, at least, the inclusion therein of the item of capital net loss,—would have been unnecessary, since this construction is based solely upon the provision of Section 47(c) and Section 101(b) and in no way gives any effect to Section 47(d). Section 47(d) was obviously intended to have some effect; and effect can be given to it if, and only if, the term "net income" in Section 47(c) is construed in conformity with the definition of that term in Section 21; and, in our opinion, that is the meaning contemplated by Congress. This will be the more apparent if reference is made to Section 101(a).[4] If petitioner had derived a capital net gain during the seven-month period, there could be no serious question but that the meaning of "net income" in Section 47(c) would be the same as in Section 21. Helvering v. Bliss, supra. Yet, the passage of Section 47(d) indicates that when a capital net gain is derived, in a taxable year of less than twelve months due to a change in accounting period, Congress contemplated that Section 47(c) should not provide the sole method of computation, but that an alternative method, presumably comparable to that specified in Section 101(a), should be provided by administrative regulation.

---

2 " 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23."

3 Section 23 (n) provides that in computing net income there shall be allowed as a deduction from gross income—'In the case of an individual, contributions or gifts made within the taxable year to or for the use of: * * * to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection."

4 "Sec. [§] 101. Capital Net Gains and Losses

"(a) Tax in Case of Capital Net Gain. In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain."

Since both capital net gain and capital net loss are specified in Section 47(d), it cannot be supposed that the regulations contemplated therein were intended to apply only to cases in which the taxpayer derives a capital net gain.

In view of the general policy underlying Sections 101 and 47, it may well be that the questioned part of the method of computation by which the tax deficiency herein was assessed, namely, placing the taxpayer's "ordinary net income" on an annual basis, reaches a result that conforms in a general way to the Congressional policy; but we are of the opinion that, if Congress intended this result when a capital net loss is sustained, it clearly intended that it be accomplished not by construing "net income" in Section 47(c) to mean the same as "ordinary net income" in Section 101(b) but by means of regulations promulgated pursuant to Section 47(d).

Since Congress has indicated its intent in Section 47(c) that only "net income," as defined in Section 21, shall be placed upon an annual basis and since no regulation has been promulgated under Section 47(d) requiring "ordinary net income" or capital net loss to be placed on an annual basis, we think there was no warrant for so doing in computation of petitioner's tax. Cf. McFeely v. Commissioner, 296 U.S. 102, 111, 56 S.Ct. 54, 58, 80 L.Ed. 83, 101 A.L.R. 304, where Mr. Justice Roberts said: "Here the rule obtains that a taxing statute, if of doubtful intent, should be construed favorably to the taxpayer. To depart from the literal meaning of section 101(c) (8) would be to penalize the taxpayer by lengthening the period during which the capital asset must be held in what is really a single ownership to obtain the advantage of the reduced tax. Under these circumstances we ought not to depart from the plain meaning of the section in an effort to bring about a uniformity which it is claimed Congress intended but failed to express."

We think the applicable sections of the Act do not bear the construction placed upon them by either the Commissioner or the Board in their computations. At any rate, the construction here urged by the Commissioner is of sufficiently doubtful validity to entitle petitioner to that construction most favorable to him. White v. Aronson, 302 U.S. 16, 58 S.Ct. 95, 82 L.Ed. 20; McFeely v. Commissioner, supra; Miller v. Standard Nut Margerine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422. Cf. Helvering v. Bliss, supra; United States v. Pleasants, supra.

We conclude that petitioner owes only the amount of tax he concedes to be due under Section 101(b). The judgment of the Board of Tax Appeals is reversed and the cause remanded for further proceedings in accordance with the views expressed herein.