**MILBANK v. DUGGAN, Collector of Internal Revenue.**

**No. 89.**

Circuit Court of Appeals, Second Circuit.

Dec. 3, 1942.

Clarence Castimore and Cadwalader, Wickersham & Taft, all of New York City (Thomas B. Gilchrist, of New York City, of counsel), for appellant.

John B. Creegan and Mathias F. Correa, U. S. Atty., both of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment dismissing his complaint upon the merits in an action against a collector of internal revenue to recover income taxes which were unlawfully collected for the year 1932. It is conceded that the amount in dispute was unlawfully collected and the only issue is whether the plaintiff filed any claim for refund within the period limited by § 322(b) (1) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 571—two years after the tax was paid. The deficiency assessed and paid arose because, although the plaintiff had contributed to charities no more than 15% of his net income, if "capital net losses" were not deducted, the Commissioner insisted upon deducting "capital net losses" to reach the base on which the percentage was to be applied. That was in 1933 and on April 4, 1938, the Court of Claims (Pleasants v. United States, 22 F.Supp. 964) decided that "capital net losses" should not be deducted and the Supreme Court affirmed the judgment on January 3, 1939 (305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217). On November 7, 1934, the plaintiff filed a protest against the deficiency which had been assessed against him on October 24, 1934, and which included several items other than that arising from the disallowance of a part of his charitable contributions. As to that he said: "With respect to the reduction in contributions amounting to $9,641.33, the taxpayer will leave this matter in abeyance pending a decision of the Supreme Court of the United States on a case involving the same principle." He was given a hearing on the protest and the original deficiency was reduced, but the assessment was unchanged as to deductible contributions. This amended deficiency he paid on March 4, 1935. On September 27, 1935, he filed a claim for refund, not based upon the alleged error in deducting his contributions, but because he had overcharged himself with rents in 1932; and on December 5, 1935, he filed a second claim for refund to cover the possibility that losses deducted by him for 1933 might be shifted to 1932. These two claims the Commissioner dealt with on January 18, 1936; he allowed the first and held the second in abeyance until the plaintiff's tax for 1933 should be finally decided. As he had reduced the plaintiff's income for 1932 by allowing the deduction for rent claimed, the deduction for contributions was still further reduced, but it continued to be computed by subtracting the "capital net losses" from the net income. The overassessment amounting to $10,625.02, so resulting, the plaintiff accepted on February 1, 1936, as correct on "Form 873," adding, however, that he reserved "the right to ask for a reconsideration of his claim for refund in case the courts should ultimately determine that the taxpayer need not deduct capital net losses * * * in arriving at the base" for charitable deductions.

Meanwhile the return for 1933 had been audited and on April 18, 1938 the plaintiff consented to the "assessment and collection" of a deficiency for 1933 of $39,586.67 and "accepted as correct" an overassessment for 1932 of $27,936.68. To this, nevertheless, he appended the statement that his acceptance was: "Without prejudice, however, to my right to file and/or prosecute any claim or claims for refund heretofore made or to be made or filed in the future." On May 3, 1938, the Commissioner assessed a deficiency for 1933 of $39,586.67 as agreed to by the plaintiff on April 18 and granted an overassessment of $26,899.76 for 1932. The computations annexed to this document show that the overassessment was figured as before, that is, by allowing as a deduction for contributions only 15% of the income remaining after deducting "capital net losses." The deficiency for 1933 was also computed in the same way, even to the extent of disallowing all contributions because the "capital net losses" in 1933 had exceeded the net income.

The plaintiff relies chiefly, as we understand it, upon his acceptance of February 1, 1936, on Form 873, to which he added the reservation we have quoted. He might equally rely upon his protest of November 7, 1934, and perhaps he does; but it adds nothing to the protest of February 1st and we will ignore it. His theory is that under the doctrine of United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132, such a reservation is itself a claim; or that it is to be taken as an amendment of one or both of the claims

made on September 27, and December 5, 1935. It is very clear that the reservation was not an amendment of the claims of September 27 or December 5. These related to independent matters which had not the remotest relation to charitable contributions; the addition of the present claim to them would be no more an amendment of them than the addition of a cause of action upon one contract would be the amendment of a complaint upon another contract. To allow an entirely alien item of refund to be introduced into a claim already filed would offer a ready means of circumventing the limitation imposed by the statute upon the time within which claims may be filed.

The argument is much more plausible that the reservation was itself a claim; indeed we think that under United States v. Kales, supra (314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132), whether it was a claim, stricti juris, it could have been turned into one. But we think that to become such, it had to be amended. Section 3772(a) (2) of Title 26, U.S.C.A. Int.Rev.Code allows an action to be brought after six months have elapsed from the filing of a claim and within two years after its disallowance; a provision plainly intended to give the Commissioner six months after he becomes aware that the taxpayer has called upon him to act. In United States v. Kales, supra (314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132), the taxpayer, who had filed a reservation which, like the plaintiff's, was contingent upon a future event, filed an amended claim after the event had happened which for the first time called upon the Commissioner for any action. Without such an amendment the taxpayer's suit would not have lain; he would have deprived the Commissioner of the period which the statute gives him. The plaintiff's reservation was exactly the same; it did not call upon the Commissioner to act; it merely declared that the plaintiff would ask for a "reconsideration" if "the courts should ultimately determine" the point in his favor. That presupposed that the plaintiff would advise the Commissioner when the time arrived at which he was to act upon the claim; certainly he could not demand that the Commissioner should follow the decisions to learn when they had "ultimately" determined the point.

The Commissioner's action of May 3, 1938 was therefore not in any sense a disallowance of the claim, assuming that if it had been, it would have dispensed with the need of an amendment. True, he did not change his original position, but took it again for the year 1933. No doubt he would have rejected the claim if he had acted upon it at all; but what he would have done is not to be confused with what he did. He did not disallow the claim because the plaintiff had never asked him to act upon it.

Moreover, if his action of May 3, 1938 could be regarded as a disallowance, it would not serve the plaintiff for the action was brought in October, 1940, and that would have been too late under § 3772(a) (2) of Title 26, U.S.C.A. Int.Rev.Code. We do not decide, however, whether the time has yet expired within which the reservation of February 1, 1936, can be amended and made into a claim on which the Commissioner will be bound to pass.

Judgment affirmed.