**MILBANK v. DUGGAN, Former Collector of Internal Revenue.**

District Court, S. D. New York.

March 22, 1944.

Cadwalader, Wickersham & Taft, of New York City (Clarence Castimore, of New York City, of counsel), for plaintiff.

James B. M. McNally, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendant.

BRIGHT, District Judge.

Both parties move for summary judgment in an action brought to recover taxes which were illegally collected on plaintiff's income for the year 1932. Defendant contends that plaintiff's amended claim for refund was not timely filed, and that in any event a recovery can only be had for a less amount than demanded. Similar litigation was had between the same parties, resulting in a dismissal upon the merits, after a motion of like character, and an affirmance by the Circuit Court of Appeals in Milbank v. Duggan, 2 Cir., 131 F.2d 898.

The original dispute arose as to the amount which plaintiff might deduct for charitable and religious gifts, plaintiff contending that he was permitted to deduct not to exceed 15% of his net income before subtracting capital net losses. The Commissioner claimed that the base must be the net income after net capital losses are deducted.

The determination of that dispute was held in abeyance until the Supreme Court settled the question, which it did on January 3, 1939, favorably to the plaintiff. United States v. Pleasants, 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217.

The prior action was brought in October, 1940, so that the effect of the events up to that date have already been considered. The chronology of those events

556

to make the present dispute understandable, can briefly be mentioned. On October 24, 1934, the Commissioner recommended, among other things, an additional tax because of what he claimed was an excessive deduction for charitable and religious gifts, and further stated that "Consideration of this issue will be postponed until final court decision thereon". Plaintiff on November 7, 1934, protested any additional tax by reason of this computation, but acquiesced in the suggestion that the matter be held in abeyance pending the decision of the Supreme Court of a case involving the same principle. On March 4, 1935, plaintiff paid the additional tax assessed against him. Although the amount of the charitable deduction was changed from time to time thereafter, in other readjustments of the plaintiff's tax for the year 1932, neither party in any way modified the understanding that the legality of the Commissioner's action would await the ultimate ruling by the Supreme Court. Refunds of income taxes were asked by plaintiff as to other items entirely independent of his charitable deduction claim. But in the acceptances filed as to two of those revisions, he carefully reserved his rights to a further revision. Thus, on February 1, 1936, he accepted an over-assessment agreed to by the Commissioner, reserving the right to ask for a reconsideration of his claim for a refund in case the courts should ultimately determine the matter favorably to him. That reservation was received by the Commissioner without comment. Again on April 18, 1938, plaintiff consented to a deficiency assessment based upon his 1933 income, and also accepted an over-assessment based upon his 1932 income, "without prejudice, however, to my right to file and/or prosecute any claim heretofore made or to be made or filed in the future."

However, he was notified by the Commissioner on May 3, 1938 that as he had signed the form sent him "with qualifications" it could not be accepted. It is contended that this constituted a rejection of any claim arising out of the illegal change by the Commissioner in his charitable deductions. I can see nothing to this contention. At that time those deductions were not even the subject of discussion. The determination as to them, by agreement, was still suspended awaiting the Supreme Court decision. In any event, it was no more than a rejection of the form and did not in any way affect the merits of this controversy or of the controversy then under discussion.

The affirmance in the Circuit Court of Appeals held that the reservations mentioned did not constitute an amendment of claims made for refunds independent of and not in any way related to charitable contributions. The court did say, however, with reference to the reservations [131 F.2d 900]:

"The argument is much more plausible that the reservation was itself a claim; indeed we think that under United States v. Kales, supra (314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132), whether it was a claim, stricti juris, it could have been turned into one. But we think that to become such, it had to be amended. Section 3772(a) (2) of Title 26, U.S.C.A. Int.Rev.Code allows an action to be brought after six months have elapsed from the filing of a claim and within two years after its disallowance; a provision plainly intended to give the Commissioner six months after he becomes aware that the taxpayer has called upon him to act. In United States v. Kales, supra (314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132), the taxpayer, who had filed a reservation which, like the plaintiff's, was contingent upon a future event, filed an amended claim after the event had happened which for the first time called upon the Commissioner for any action. Without such an amendment the taxpayer's suit would not have lain; he would have deprived the Commissioner of the period which the statute gives him. The plaintiff's reservation was exactly the same; it did not call upon the Commissioner to act; it merely declared that the plaintiff would ask for a 'reconsideration' if 'the courts should ultimately determine' the point in his favor. * * *

"The Commissioner's action of May 3, 1938 was therefore not in any sense a disallowance of the claim, assuming that if it had been, it would have dispensed with the need of an amendment. * * * He did not disallow the claim because the plaintiff had never asked him to act upon it.

"Moreover, if his action of May 3, 1938 could be regarded as a disallowance, it would not serve the plaintiff for the action was brought in October, 1940, and that would have been too late under § 3772(a) (2) of Title 26, U.S.C.A. Int.Rev.Code. We do not decide, however, whether the time has yet expired within which the reservation of February 1, 1936, can be amended and made into a claim on which the Commissioner will be bound to pass."

That appeal was decided on December 3, 1942. On or about December 18, 1942, plaintiff filed an amended claim for a refund of the amount which he had overpaid by reason of the reduction in his charitable and religious gift item, specifically amending his informal claims of November 7, 1934 (which is the protest mentioned above) and February 1, 1936 (the reservation described) and now seeks recovery of $11,-639.76, with interest.

After the filing of the amended claim for refund, the Commissioner wrote plaintiff on March 31, 1943, that his case was closed in accordance with the final judgment affirmed by the Circuit Court of Appeals, as above mentioned, that he was precluded from giving further consideration to the case, and his claim was disallowed in full in accordance with the provisions of Section 3772(a) (2) of the Int.Rev.Code, 26 U.S.C.A. Int.Rev.Code, § 3772(a) (2).

■ I think the plaintiff should succeed, and I am in part impelled to this conclusion by the fact that the original exaction of additional tax was concededly illegal. It is admitted here that plaintiff is entitled to recovery if he establishes that a timely claim for refund was filed. The Commissioner knew that plaintiff claimed that the additional tax was erroneous. He expressly consented that his consideration be postponed until the legality of his position should be ultimately determined. That claim was clearly presented in the protest of November 7, 1934, and reiterated in the reservation of February 1, 1936. There was no concealment; what was held in abeyance was clearly understood. There was no contention, not even an intimation, that plaintiff had not adequately presented his position or reserved his rights. In other words, there never was a rejection until within three and one-half months before this action was commenced. When it was obvious that a definite stand was to be taken rejecting any right to plaintiff of relief from what he had been compelled to pay illegally, the claim was amended fully and complied with the reservations. Defendant succeeded in the prior action because he had not been given an opportunity to object. He has been now given that opportunity and has been fully and formally informed of what he already knew.

I think the plaintiff had the right to amend, that his amendment was timely, and that this action is not barred. United States v. Kales, 314 U.S. 186, 194, 196, 62 S.Ct.

214, 86 L.Ed. 132; Neilson v. Harrison, 7 Cir., 131 F.2d 205; United States v. Memphis Cotton Oil Co., 288 U.S. 62, 71, 73, 53 S.Ct. 278, 27 L.Ed. 619; Bonwit Teller & Co. v. United States, 283 U.S. 258, 265, 51 S.Ct. 395, 75 L.Ed. 1018; Tucker v. Alexander, 275 U.S. 228, 231, 48 S.Ct. 45, 72 L.Ed. 253.

The informal claim of November 7, 1934, was presented within the prescribed time, Section 322(b) (1) of the Internal Revenue Act of 1932, 26 U.S.C.A. Internal Revenue Acts, page 571; and suit was begun within the time prescribed by Section 1103(a) of the Act of 1932, now Section 3772(a) (2) of 26 U.S.C.A. Internal Revenue Code.

The claim having been filed within two years after the tax was paid, plaintiff is entitled to the amount illegally exacted with interest.