## MERRILL v. UNITED STATES.
### No. 49846.

United States Court of Claims.

June 3, 1952.

John J. Boland, New York City (Chadbourne, Hunt, Jaeckel & Brown, New York City, on the briefs), for plaintiff.

Joseph H. Sheppard, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Plaintiff taxpayer is suing for a refund of taxes for the calendar years 1944 and 1945, in which he had a net income (including net capital gains) of $1,246,597.23, and $1,975,818.74, respectively. Section 12(g) of the Internal Revenue Code, 26 U.S.C.A. § 12(g), as constituted for the years in question, contained an effective tax rate limitation of 90 percent of the net income of the taxpayer, applicable to taxes imposed by sections 11 and 12. Recovery in this suit is dependent upon the application of section 12(g) to the alternative capital gains tax imposed by section 117(c) (2).

The following provisions of the Internal Revenue Code, 26 U.S.C.A. applicable to the taxable years 1944 and 1945, are involved in this case:

"Sec. 11. *Normal tax on individuals.* There shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax of 3 per centum of the amount of the net income in excess of the credits against net income provided in section 25(a). For alternative tax which may be elected if adjusted gross income is less than $5,000, see Supplement T.

"Sec. 12. *Surtax on individuals.*

"(a) *Definition of 'surtax net income'.* As used in this section the term 'surtax net income' means the amount of the net income in excess of the credits against net income provided in section 25(b).

"(b) *Rates of surtax.* There shall be levied, collected, and paid for each taxable year upon the surtax net income of every individual the surtax shown in the following table:

[Here are set out the rates of tax]

"(c) *Tax in case of capital gains or losses.* For rate and computation of alternative tax in lieu of normal

tax and surtax in the case of a capital gain or loss from the sale or exchange of capital assets held for more than 6 months, see section 117(c).

\* \* \* \* \* \*

*"(g) Limitation on tax.* The tax imposed by this section and section 11, computed without regard to the credits provided in sections 31, 32, and 35, shall in no event exceed in the aggregate 90 per centum of the net income of the taxpayer for the taxable year.

\* \* \* \* \* \*

"Sec. 117. *Capital gains and losses.*

\* \* \* \* \* \*

*"(c) Alternative taxes.*

\* \* \* \* \* \*

*"(2) Other taxpayers.* If for any taxable year the net long-term capital gain of any taxpayer (other than a corporation) exceeds the net short-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 11 and 12, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:

"A partial tax shall first be computed upon the net income reduced by the amount of such excess, at the rates and in the manner as if this subsection had not been enacted, and the total tax shall be the partial tax plus 50 per centum of such excess. \* \* \*"

Sections 11 and 12 imposed upon the net income of the individual taxpayer a normal tax and a surtax respectively. Section 117(c) (2) imposed an alternative tax "in lieu of the tax imposed by sections 11 and 12," if the alternative tax was less than the combined normal tax and surtax imposed by sections 11 and 12. The alternative tax imposed by section 117(c) (2) was available for any taxable year only to a taxpayer (other than a corporation) whose net long-term capital gains exceeded his net short-term capital losses for that year. Plaintiff met this requirement for the years 1944 and 1945.

Section 117(c) (2) provided for computation of the alternative tax as follows: the taxpayer would first reduce his net income by the amount by which his net long-term capital gains exceeded his net short-term capital losses. He would then compute a "partial tax" upon his net income so reduced.

By the terms of section 117(c) (2) this partial tax was to be computed "at the rates and in the manner as if this subsection [117(c) (2)] had not been enacted." In other words by direction of section 117 (c) (2) it was then necessary to turn to sections 11 and 12 for the computation of the partial tax imposed by section 117(c) (2) upon the net income of the taxpayer reduced by the excess of his net long-term capital gains over his net short-term capital losses for the particular taxable year.

After computation of that partial tax, the taxpayer returned to section 117(c) (2) which then provided that his *total* alternative tax would be "the partial tax plus 50 per centum of such excess [of net long-term capital gains over net short-term capital losses]."

Thus sections 11 and 12 not only imposed the normal tax and surtax, but they also figured in the computation of the tax imposed by section 117(c) (2).

Section 12(g) provided that:

"The tax imposed by this section and section 11 \* \* \* shall in no event exceed in the aggregate 90 per centum of the net income of the taxpayer for the taxable year."

 It is plaintiff's contention where there is an alternative tax imposed by section 117(c) (2) that section 12(g) operates prior to the addition of the alternative partial tax to the capital gains tax, to limit the partial tax to 90 percent of the reduced or ordinary net income, i. e., of the figure exclusive of net capital gains taken as "net income" for the computation of the partial tax under sections 11 and 12.[1]

---

1. Since the tax on plaintiff's net capital gains was only 50 percent, the total alternative tax under plaintiff's contention would be the sum of a 50 percent tax

and of a maximum 90 percent tax. The *effective* tax rate on plaintiff's total net income would therefore be something less than 90 percent.

Defendant concedes that section 12(g) is applicable to the computation of the alternative tax, but contends that it operates after the addition of the partial tax to the capital gains tax, to limit the total alternative tax to 90 percent of the total net income.

·To support its position defendant points out that under plaintiff's contention his tax "would be only 89.5625 percent of his net income (for 1944) and there is no provision in the Internal Revenue Code for that rate of tax." This argument, however, ignores the fact that the rate finally arrived at is not a single rate expressly to be found in the Code but is a computed resultant of three separate rates (sections 11, 12, and 117) which are found in the Code and which must be applied under defendant's method of computation just as well as under the plaintiff's.

Defendant further points out that under plaintiff's contention section 12(g) would "be used as a tax reduction provision for all taxpayers whose actual net income included net capital gains" and that such would be completely contrary to Congressional intent.

In the first place, however, under plaintiff's contention section 12(g) would actually operate to reduce the tax only where a taxpayer's income would be in such a high bracket that the partial tax levied by section 117(c) (2) (and computed under sections 11 and 12) would exceed 90 percent of the taxpayer's net income exclusive of net capital gains. In the second place section 12(g) was intended as a relief measure for high-bracket income taxpayers, without regard to whether or not their income included net capital gains. Defendant's conclusion that such a result is improper in the particular instance where the alternative tax does not exceed 90 percent of his total net income · is an assumption of the very point in issue. And the legislative history, as we shall point out later, is at best inconclusive as to the intended operation of section 12(g) upon the computation of the alternative tax imposed by section 117(c) (2).

Defendant further argues that—

"The sections of the Code which impose the tax here involved are section 11 (normal tax) and section 12(b) (sur-tax), and it is only after the tax imposed by those two sections has been constructed that section 12(g) is even taken into consideration and then only where the tax computed under the tax imposing sections exceeds ninety percent of the taxpayer's net income."

The fundamental fallacy in this argument is that the tax involved here is the alternative tax, which is not imposed by sections 11 and 12 as defendant states, but by section 117(c) ·(2) in lieu of the tax imposed by sections 11 and 12.

Defendant's statement overlooks the fact that there are three separate tax-imposing sections involved here—sections 11, 12, and 117—and that section 12(g) by its very terms is a limitation on "the tax imposed by this section [12] and section 11." Section 12(g) is not independently operative to place any limitation on the tax imposed by section 117(c) (2). Section 12(g) is applicable to a computation of tax imposed by section 117 only to the extent that section 117 directs, and then only as an integral part of sections 11 and 12. Section 117 directs in effect that sections 11 and 12 be applied in the computation of the partial alternative tax, and section 12(g) is· consequently applicable only to the partial tax computation. No justification appears for any other application of its provisions in this case.

Defendant also asserts that the term "net income" as used in section 12(g) would be deprived of its usual and generally accepted meaning if section 12(g) is to be applied to ordinary net income or net income as reduced·by the excess of net long-term capital gains over net· short-term capital losses under the section 117 partial tax. It must be remembered, however, that section 12(g) is an integral part of section 12, not an in-. dependant unrelated provision. The term "net income" as used in section 12(g) has the same meaning as used elsewhere in sections 11 and 12. Thus where sections 11 and 12 are made operative by section 117(c) (2) for purposes of computation of the partial tax, section 117(c) (2) says in effect that "net income" as used in sections 11 and 12 shall be considered to mean "net income exclusive of net capital gains," or "ordinary

net income." If this were not true, computation of the partial tax would be impossible, since sections 11 and 12 use the term "net income" and not "ordinary net income." [2] This is no less true of section 12 (g) than it is of any other subsection of sections 11 and 12.

Thus if there is any deprivation of the term "net income" of its usual and generally accepted meaning, that deprivation is required by the operation of section 117, and applies to the entire sections 11 and 12, and not merely to section 12(g). Defendant's interpretation on the other hand offers no less distortion of the meaning of "net income" since defendant would attribute different meanings to the term as used in successive subsections of the same section.

All of defendant's arguments seem to be directed to the proposition that the intent and effect of section 12(g) were to limit the amount *finally collected* from the taxpayer to 90 percent of his total net income, whether taxed under sections 11 and 12 or section 117. Defendant argues that such was the effect of section 456, part of the wartime victory tax, and a forerunner of section 12 (g) in the sense that both were effective rate limitations. Section 456 was repealed by the same statute which enacted section 12(g). 58 Stat. 231. Six months prior to that enactment, however, Congress rejected a bill substituting for section 456 a clause which would have better supported defendant's contention here. That bill, H. R. 3687 (Sec. 105), 78th Cong. 1st Sess., would have expressly placed an effective rate limitation upon all taxes imposed by Chapter 1 of the Internal Revenue Code 26 U.S.C.A. (which includes sections 11, 12, and 117), and not merely upon those taxes imposed by sections 11 and 12, as was done by section 12(g) six months later. If it was the intention of Congress by the enactment of section 12(g) that the 90 percent limitation should apply to the tax imposed by section

117(c) (2) to limit the total alternative tax, there was little indication thereof in the report of the House Ways and Means Committee accompanying the bill containing section 12(g), H.Rpt. No. 1365, 78th Cong., 2d Sess., and there was a complete failure to so provide in the statute itself. In the final analysis, of course, it is the statutes themselves which must be construed, and legislative materials are important only to the extent they shed light on ambiguities in the statutes.

Defendant nevertheless relies upon a statement contained in the report of the House Ways and Means Committee, supra, in part as follows, as an indication of Congressional intent:

"There is inserted a new subsection (g), designed to place a ceiling upon the aggregate normal tax and surtax of an individual taxpayer in a manner similar to that of section 456 which has the effect of limiting the aggregate normal tax, surtax, and victory tax. Since section 456 being a part of the victory tax, is repealed by section 6 of the bill, this new subsection is made *a part of section 12 of the Code in order to limit the aggregate tax imposed by such section and section 11* to 90 percent of the net income of the individual." [Emphasis supplied.]

There is no mention made in the Committee Report of the alternative tax imposed by section 117(c) (2). On the contrary section 12(g) was construed by the Committee to be applicable to those taxes imposed by sections 11 and 12. Whether the Congress considered the section 117(c) (2) alternative tax in this connection is not indicated. That they affirmatively intended section 12 (g) to apply only to taxes imposed by sections 11 and 12 is amply demonstrated, both by the Committee report and by the language of the statute itself.

2. Cf. United States v. Pleasants, 305 U.S. 357, 361, 59 S.Ct. 281, 283, 83 L.Ed. 217, discussed infra in this opinion: "In such a case the statute directs that a partial tax shall be first computed upon the basis of the 'ordinary net income' and at the rates and in the manner provided in Sections 11 and 12. * * *

And, as in such case there is no capital gain, the *'ordinary net income'* under Section 101(b), that is, the net income computed after excluding capital loss and capital deductions, *is the only net income upon which a tax is laid.*" [Emphasis added.]

That the alternative tax is not imposed by sections 11 and 12 is also clear. And merely because the section 117 alternative tax was *in lieu* of the tax imposed by sections 11 and 12 is no reason to read into section 117 a provision expressly applicable only to sections 11 and 12.

We do not believe the cases of Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, and Pleasants v. United States, 22 F. Supp. 964, 86 Ct.Cl. 679, affirmed 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217, require a different result in this case. Those cases, relied upon by defendant as well as plaintiff, involved limitations on deductions of charitable contributions. Neither Bliss nor Pleasants was concerned with the precise code provisions or questions involved in the instant case, although in each case some issue as to the meaning of the term "net income" was raised. The court in Pleasants did not consider as controlling the argument that a particular interpretation would very the general meaning of that term as set out in sections 21, 22 and 23, and refused to construe those sections "so as to derogate from the special and explicit provisions" of the tax-imposing section. Supra, 305 U.S. at page 362, 59 S.Ct. at page 284. The decisions in both Bliss and Pleasants were in favor of the taxpayer, and the following declaration of the court found in Bliss 293 U.S. at pages 150–151, 55 S.Ct. at page 20, and approved in Pleasants, is perhaps significant:

"If the meaning of the Act were doubtful, we should still reach the same conclusion. The exemption of income devoted to charity and the reduction of the rate of tax on capital gains were liberalizations of the law in the taxpayer's favor, were begotten from motives of public policy, and are not to be narrowly construed. Nor should the reduction in the rate of tax on capital gain, first granted in the Revenue Act of 1921, be held to circumscribe the privilege granted in the earlier Acts, and retained in later ones, with respect to charitable contributions, unless that result be plainly required by the language used. * * *"

We believe our holding in the instant case not only follows the express language of the Code, but also is in accord with that declaration by the Supreme Court, in preserving for the taxpayer the benefits of both the effective rate limitation of section 12(g) and the capital gains provisions of section 117(c) (2), each intended as a liberalization in favor of the taxpayer.

In the absence of evidence of Congressional intent to the contrary, either in the statute or elsewhere, we must hold that section 12(g) was applicable only to the tax imposed by sections 11 and 12, and it must be given effect in accordance with the plaintiff's contention.

Plaintiff's total alternative tax under section 117(c) (2) for 1944 amounts to $1,116,-496.33, of which he had paid $1,114,850.70 on or before March 15, 1945. There was a deficiency therefore of $1,645.63, with interest from March 15, 1945, making a total due as of January 28, 1948, of $1,927.03.[3] The Collector actually assessed a deficiency of $7,086.81 for 1944, which sum, together with interest thereon of $1,211.75, was paid to the Collector on January 21, 1948. For the year 1944, therefore, plaintiff is entitled to recover $6,371.53, which represents the difference between $8,298.56 (actually paid on January 21, 1948), and $1,927.03 (actually due on that date), with interest according to law.

Plaintiff's total alternative tax for 1945 amounts to $1,763,129.47. An overpayment of $15,107.40 plus interest thereon of $2,-583.16 was paid to the Collector on January 21, 1949. For the year 1945 plaintiff is therefore entitled to recover $17,690.56 (the amount actually paid on January 21, 1949), with interest according to law.

Judgment will be entered for the plaintiff in the total amount of $24,062.09, with interest on $6,371.53 from January 21, 1948, and on $17,690.56 from January 21, 1949, according to law.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

3. Interest on $1,645.63 at six percent from March 15, 1945, to January 21, 1948, was $281.40, making a total due on that day of $1,927.03.