PITCAIRN COMPANY
v.
UNITED STATES.
No. 58-59.

United States Court of Claims.
Jan. 20, 1960.

Ernest L. Nagy, Philadelphia, Pa., for plaintiff, Frederick E. S. Morrison, Philadelphia, Pa., was on the briefs.

Eugene Emerson, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant.

LARAMORE, Judge.

Plaintiff sues to recover the interest it paid as a part of the income tax and personal holding company deficiencies assessed for the year 1952, together with interest on the amounts so paid and on the deficiency assessments for the period of time such deficiencies were held.

In March of 1953, plaintiff, a Delaware corporation, filed its income tax return for 1952, which showed a tax liability of $471,863.39. The income tax so reported and paid was the alternative tax (less foreign tax credit) provided for in section 117(c), 26 U.S.C.A. § 117 (c), and was computed as follows:

(1) Net income ......................... $7,053,653.03

(2) Dividends received credit under § 26(b)
(85% × $6,884,015.04) .............. 5,851,412.78

(3) Surtax net income ................... 1,202,240.25

(4) Less: net long-term capital gain reduced
by net short-term capital loss .......... 546,279.35

(5) Surtax net income as reduced .......... 655,960.90

(6) Combined normal tax and surtax on (5)
(52% less $5,500) .................... 335,599.67

(7) 26% of (4) ......................... 142,032.63

(8) Alternative tax ...................... 477,632.30

(9) Less: Foreign tax credit ............. 5,768.91

(10) Tax liability ....................... 471,863.39

—◆—

Such alternative tax was applicable because it was less than the normal tax and surtax imposed under sections 13 and 15, which was computed as follows:

(1) Net income ......................... $7,053,653.03

(2) Dividends received credit under § 26(b)
(85% × $6,884,015.04) .............. 5,851,412.78

(3) Surtax net income ................... 1,202,240.25

(4) Combined normal tax and surtax on (3)
(52% less $5,500) .................... 619,664.93

—◆—

At the same time, plaintiff also filed its personal holding company tax return for 1952. Plaintiff's 1952 undistributed subchapter A (Personal Holding Company) net income, as computed on such return, was $503,629.06, computed as follows:

(1) Net income ......................... $7,053,653.03

(2) Add: Contributions ................. 820.00

(3) Total ............................. 7,054,473.03

(4) Less: Contributions ...... $ 820.00
Federal income taxes
accrued ......... 471,863.39
Foreign income taxes 5,768.91      478,452.30

(5) Subchapter A net income ............. 6,576,020.73

(6) Less: Dividends paid ................ 5,528,452.20

1,047,568.53

(7) Less: Dividends paid after close of taxable year ........................... 543,939.47

(8) Undistributed subchapter A net income .. 503,629.06

Based on such undistributed subchapter A net income, plaintiff computed its alternative tax under section 117(c) as follows:

| | |
|---|---|
| (1) Undistributed subchapter A net income .. | $503,629.06 |
| (2) Less: Net long-term capital gain ........ | 546,279.35 |
| (3) Undistributed subchapter A net income as reduced ........................... | None |
| (4) 26% of (2) .......................... | 142,032.63 |
| (5) Less: Portion of income tax under chapter 1 attributable to item (2) .............. | 142,032.63 |
| (6) Alternative tax ....................... | None |

In September of 1955, plaintiff was assessed, for 1952, an additional income tax of $142,032.63, together with interest thereon of $23,622.17. At the same time, there was assessed against plaintiff a personal holding company surtax in the amount of $94,041.87, together with $15,640.58 interest thereon. All of these amounts were paid by plaintiff on December 23, 1955.

The additional income tax assessment was based upon a recomputation by the Government of the alternative tax on a basis which accepted the plaintiff's figures in all respects except that the dividend received credit under section 26(b), 26 U.S.C.A. § 26(b) was limited to 85 percent of the plaintiff's net income after reducing such net income ($7,053,653.-03) by the net capital gain ($546,279.-35). As a result thereof, the alternative tax became $644,107.78 and it was inapplicable because it was greater than the amount of the combined normal tax and surtax as recomputed by the Government at $613,896.02 (normal tax and surtax of $619,664.93 less foreign tax credit of $5,768.02), or $142,032.63 greater than the amount reported on the plaintiff's return.

The recomputation is as follows:

| | |
|---|---|
| (1) Net income ......................... | $7,053,653.03 |
| (2) Less: Net long-term capital gain reduced by net short-term capital loss .......... | 546,279.35 |
| (3) Net income as reduced ............... | 6,507,373.68 |
| (4) Dividends received credit: 85% of $6,-884,015.04 dividends, limited to 85% of net income reduced by the amount of the excess of the long-term capital gain over the short-term capital loss: 85% of (3) .. | 5,531,267.63 |
| (5) Surtax net income for purposes of § 117 (c) ................................ | 976,106.05 |
| (6) Combined normal tax and surtax (52% of $976,106.05 minus $5,500) ............ | 502,075.15 |
| (7) Partial tax ......................... | 502,075.15 |
| (8) 26% of (2) ......................... | 142,032.63 |
| (9) Alternative tax ..................... | 644,107.78 |

This recomputation was based upon Rev.Rul. 54–28, 1954–1 Cum.Bull. 123, which required that the dividends received credit be determined on the net income reduced by the excess of the net long-term capital gain over the net short-term capital loss for the purpose of computing the alternative tax of corporations under section 117(c) of the Internal Revenue Code of 1939.

The additional personal holding company surtax assessment was based upon a recomputation of the holding company tax liability resulting from the income tax deficiency assessment of $142,032.63. Defendant reduced plaintiff's 1952 undistributed subchapter A net income by $142,032.63 (the amount by which it had increased plaintiff's income tax as set forth above), and recomputed the alternative tax as follows:

(1) Undistributed subchapter A net income ..............$361,596.43

(2) Net long-term capital gain ............. 705,138.73
(3) Less: Net short-term capital loss ...... 158,859.38

(4) Excess of net long-term capital gain over net short-term capital loss ............................... 546,279.35

(5) Undistributed subchapter A net income reduced by capital gain .................................... None

(6) Partial surtax ................................... None
(7) 26% of (4) .................................... 142,032.63

(8) Total of items (6) and (7) ...................... 142,032.63
(9) Less: Portion of income tax under chapter 1 attributable to item (4):
Ratio of item (4) to net income:
$$\frac{546,279.35}{7,053,653.03} = 7.74463030\%$$
7.74463030% × total chapter 1 tax liability
($619,664.93) ......................... 47,990.76

(10) Alternative tax item (8) minus item (9) .......... 94,041.87

---

On January 28, 1956, Congress passed Public Law 399, 70 Stat. 8, 26 U.S.C.A. § 117(c) (1) (A) and note, which retroactively altered the consequences of Rev. Rul. 54–28 for the tax years 1952 and 1953. The Act provides:

"Relating to the allowance of the credits for dividends received, for dividends paid, and for a Western Hemisphere trade corporation · in computing the alternative tax of a corporation with respect to its capital gains.

' "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 117 (c) (1) (A) of the Internal Revenue Code of 1939 is hereby amended by inserting after the word 'reduced' the following: '(except for the purpose of determining the credits allowable under subsections (b), (h), and (i) of section 26)'.

"Sec. 2. The amendment made by section 1 shall be applicable with respect to taxable years beginning after December 31, 1951, and before January 1, 1954. No interest shall be allowed or paid on any overpay-

ment resulting from such amendment."

On February 16, 1956, the plaintiff filed two claims for refund. One was for $165,654.80—$142,032.63 income tax deficiency assessed and paid, and the $23,622.17 interest paid thereon. The other was for $109,682.45—$94,041.87 personal holding company surtax assessed and paid, and the $15,640.58 interest paid thereon.

On May 23, 1956, plaintiff's president signed an acceptance of over-assessments in the amounts of $142,032.63 (income tax) and $94,041.87 (personal holding company surtax) as correct.

Basing his action on Public Law 399, the Commissioner, on March 13, 1957, approved refunding the overassessments, excluding the interest assessed and paid thereon. After approval of this action by the Joint Committee on Internal Revenue Taxation, plaintiff was notified by registered letters dated April 26, 1957, that, to the extent not previously allowed, its claims for refund were disallowed. Shortly thereafter, plaintiff received checks from the Government in the amounts of $142,032.63 and $94,041.87.

There is no dispute as to any material fact.

The provisions of the 1939 Internal Revenue Code, 26 U.S.C.A. necessary to an understanding and determination of the questions here presented are in pertinent part as follows:

"§ 13. Normal tax on corporations.

"(a) Definitions.—For the purposes of this chapter—

"(1) Adjusted net income. The term 'adjusted net income' means the net income minus the credit provided in section 26(a), relating to interest on certain obligations of the United States and Government corporations.

"(2) Normal-tax net income. The term 'normal-tax net income' means the adjusted net income minus the sum of the following credits:

"(A) The credit for dividends received provided in section 26(b);

\* \* \* \* \* \*

"§ 15. Surtax on corporations.

"(a) Corporation surtax net income. For the purposes of this chapter, the term 'corporation surtax net income' means the net income minus the sum of the following credits:

"(1) The credit for dividends received provided in section 26(b);

\* \* \* \* \* \*

"§ 21. Net income.

"(a) Definition. 'Net income' means the gross income computed under section 22, less the deductions allowed by section 23.

"(b) Cross-references.

"For definition of 'adjusted net income' and 'normal-tax net income,' see section 13.

"§ 22. Gross income.

"(a) General definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. \* \* \*.

\* \* \* \* \* \*

"§ 26. Credits of corporations.

"In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

"(a) Interest on obligations of the United States and its instrumentalities. The amount received as interest upon obligations of the United States or of corporations organized under Act of Congress which is allowed to an individual as a credit for purposes of normal tax by section 25(a) (1) or (2). (For reduction of credit under this subsection on account of amortizable bond premium, see section 125.)

"(b) Dividends received. An amount equal to the sum of—

"(1) In general. 85 per centum of the amount received as dividends (other than dividends described in paragraph (2) on the preferred stock of a public utility) from a domestic corporation which is subject to taxation under this chapter.

\* \* \* \* \* \*

" \* \* \* In no event shall the credit allowed by this subsection exceed 85 per centum of the adjusted net income computed without regard to the deduction allowed by section 23(s)."

Sec. 117(c). (Prior to P.L. 399).

"(c) Alternative taxes.—

"(1) Corporations. If for any taxable year the net long-term capital gain of any corporation exceeds the net short-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 13, 14, 15, 204, 207(a) (1) or (3), 421, and 500, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:

"(A) A partial tax shall first be computed upon the net income reduced by the amount of such excess, at the rates and in the manner as if this subsection had not been enacted.

"(B) There shall then be ascertained an amount equal to 25 per centum of such excess, except that in the case of any taxable year beginning after March 31, 1951, and before April 1, 1954, there shall be ascertained an amount equal to 26 per centum of such excess.

"(C) The total tax shall be the partial tax computed under subparagraph (A) plus the amount computed under subparagraph (B).

\* \* \* \* \* \*

"§ 500. Surtax on personal holding companies.

"There shall be levied, collected, and paid, for each taxable year beginning after December 31, 1938, upon the undistributed subchapter A net income of every personal holding company (in addition to the taxes imposed by chapter 1) a surtax equal to the sum of the following:

"(1) 75 per centum of the amount thereof not in excess of $2,000; plus

"(2) 85 per centum of the amount thereof in excess of $2,000."

The first question to be answered is whether or not Rev.Rul. 54–28 was a valid interpretation of the Internal Revenue Code of 1939. If it was not a valid interpretation, plaintiff was entitled to the refunds of the deficiency assessments irrespective of Public Law 399, and the question of what interest, if any, plaintiff is entitled to recover is to be determined without regard to the "no interest" provision of Public Law 399.

■■■ We find that Rev.Rul. 54–28 was not a valid interpretation of existing law.

From 1942, when section 117(c) was added to the 1939 Code, through 1951, "adjusted net income" and net income were interpreted by the Internal Revenue Service (hereinafter referred to as the "Service") as including the net capital gains, and the Service accepted computations of the alternative tax under section 117(c) like the 1952 returns filed by the plaintiff.

The first indication that the Service had changed its position appeared in the instructions accompanying the 1952 return form wherein the Service indicated that it did not consider that net

income for the purpose of computing dividends received credit should properly include capital gains. In 1953 a footnote to this effect was also added on the return.

The Government argues that during the year 1953, the method of computing an alternative tax under section 117(c) (1) of the 1939 Code was clearly set forth in the statute. The alternative tax was the sum of the "partial tax" computed under section 117(c) (1) (A) and the "capital gains" tax computed under section 117(c) (1) (B). The "partial tax" computed under subparagraph (A) was based upon net income reduced by the excess of the net long-term capital gain less the net short-term capital loss. Since subparagraph (B) provided a special tax rate for any net capital gains, the exclusion of the net capital gains from the net income for the purposes of determining a "partial tax" was clearly the intent of the statute. The alternative tax was the sum of the "partial tax" and the "capital gains" tax. In determining a "partial tax" based on net income, it is clear that Congress intended a reduction of the net income, exclusive of net capital gains, as the basis for computing the "partial tax".

Looking at the pertinent language of the 1939 Code, and the judicial pronouncements interpreting substantially similar language, we cannot agree with this argument.

Section 21(a) of the 1939 Code defines "net income" as "the gross income computed under section 22, less the deductions allowed by section 23." Section 22 clearly includes capital gains in "gross income." In fact, the defendant at page 12 of its brief states a willingness to concede that as a general proposition, capital gains are ordinarily a part of a taxpayer's net income.

Pursuing the study of the statutory language to its logical conclusion, we find that section 23 provides no corporate deduction for capital gains. Section 13(a) defines "adjusted net income" as "the net income minus the credit provided in section 26(a), relating to interest on certain obligations of the United States and Government corporations." Therefore, plaintiff's net income and adjusted net income for 1952 were the same. Section 26(b) which allows the dividends received credit provides in part that "in no event shall the credit allowed by this subsection exceed 85 per centum of the adjusted net income * * * *."

Contrary to the Government's position, we think it is clear, in light of the above cited language, that Congress intended that net income include net capital gains unless it expressly prohibited such an inclusion. Section 117(c) simply divides net income into two parts and applies different tax rates to the two parts. It does not provide that the capital gains shall no longer be part of the taxpayer's net income or adjusted net income.

This is consonant with Helvering v. Bliss, 1934, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246 where it was held that the base for computing the 15 percent deduction allowable for charitable contributions under section 23(n) of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev. Acts, page 358 is the "net income" defined by section 21 and includes net capital gains even though the taxpayer elects to be taxed on net capital gains under the alternative tax rate prescribed by section 101(a).

The defendant contends that the "dicta" in Helvering v. Bliss, supra, is not controlling as "the Court was not there concerned with the precise Code provisions or questions involved in the instant case, even though some issue as to the meaning of the term 'net income' was raised." The precise Code provisions or questions were not involved, but precisely the same concept was involved. In fact, the Government's position in Bliss was stronger than it is here, because section 101(c) (7) of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev. Acts, page 373 defined "ordinary net income," the basis for computing the alternative tax, as "the net income, com-

puted in accordance with the provisions of this title, after excluding all items of capital gain, capital loss, and capital deductions."

The defendant further contends that our reasoning in Merrill v. United States, 105 F.Supp. 379, 122 Ct.Cl. 566, is "more nearly controlling" here than the reasoning in the Bliss case. In Merrill, we held that the limitation provision of section 12(g) of the 1939 Code, effective for the years 1944 and 1945, providing for a tax rate limitation of 90 percent of the taxpayer's (individual) net income, was applicable only to the tax imposed by sections 11 and 12 of the 1939 Code, 26 U.S.C.A. §§ 11, 12 on ordinary net income, exclusive of net capital gains, in computing the "partial tax" prescribed by section 117(c) (2) of the Code.

Therefore, argues the Government, it logically follows that, when a corporation computes a "partial tax" under the alternative tax provisions of section 117 (c) (1) (A), it can claim only 85 percent of the dividends received credit based upon ordinary net income exclusive of net capital gains.

We do not consider the two situations analogous. In Merrill, the limitation was on the tax rate imposed on net income. To have held that for that purpose, net income included net capital gains would have been to nullify the alternative treatment allowed by section 117(c) (2). Here the limitation is on a credit to be allowed—an entirely different question.

It is interesting to note that although both cases arise under section 117(c) of the 1939 Code, the Government in Merrill argued that net income includes net capital gains, whereas here it contends that net income does not include net capital gains.

There is further indication that the ruling was invalid. Section 34 of the 1954 Code, 26 U.S.C.A. § 34 provides for a dividends received credit for individuals that is substantially the same as the corporate dividends received credit here

in issue as the credit is based on "taxable income," which corresponds to "net income" under the 1939 Code. Regulations (Regs. § 1.34-2) were issued under section 34 following the concept of Rev.Rul. 54-28 in that they provided for an exclusion of net capital gains from the taxable income where the alternative tax on capital gains is imposed under section 1201(b) (successor to section 117(c). This regulation was held invalid in Springs v. United States, D.C., 153 F.Supp. 514. The court there said:

"* * * Section 34 allows a credit against income tax for dividends received by individuals. The credit is limited to a certain percent of 'taxable income'. 'Taxable income' is defined by Section 63(a) 26 U.S.C.A. § 63(a) for all income tax purposes as gross income less deductions, except where the standard deduction is elected. Unless there is some compelling reason to change the general definition of 'taxable income', the dividend credit is plainly limited to the specified percent of gross income less deductions, or 'taxable income'.

"The regulation under attack, Treasury Regulation § 1.34-2, provides that where the alternative tax on capital gains is imposed under Section 1201(b), 26 U.S.C.A. § 1201 (b), 'taxable income' in the dividend credit limitation means 'taxable income reduced by' 50% of capital gains. However, the alternative tax provision does not redefine 'taxable income' nor does it indicate that 'taxable income' should be reduced by capital gains in computing the dividend credit limitation. Thus, the plain language of the statutes does not provide for the reduction of 'taxable income' required by the regulation."

The regulation was also held invalid on similar reasoning in Schultz v. United States, D.C., 156 F.Supp. 811, and in Cruickshank v. Riddell, 58-1 USTC 9169. None of these decisions were appealed by the defendant, and on June 16, 1958, T.D.

6297, IRB 1958-28.13, which amended the Regulations to conform to such decisions, was issued.

The legislative history of Public Law 399 makes clear that Congress sought to reverse the effect of the position taken by Rev.Rul. 54-28 for the years 1952 and 1953. In H.Rep. No. 1356, 84th Cong., 1st Sess., 1956-1 C.B. 981, the House Ways and Means Committee stated:

"Your committee believes that the position in the ruling should be reversed for years prior to 1954 in order to provide a consistent policy for the period of the 1939 code. Under these circumstances and because your committee believes that since capital gains may be included in the ordinary corporate tax base and are excluded only in arriving at an alternative, as distinct from a separate, tax the inclusion of such capital gains in income for purposes of computing these credits under the 1939 code appears entirely reasonable." U.S.Code Cong. and Adm. News 1956, p. 2215.

The defendant contends that Public Law 399 in fact accepted the position taken by the Commissioner in Revenue Rulings 54-28, and 54-283, 1954-2 Cum. Bull. 177, which made Rev.Rul. 54-28 applicable to tax year 1952 and subsequent taxable years, as correct under the existing law. At page 7 of its brief, the defendant says:

" * * * Certainly the Congress did not purport to declare Rev.Rul. 54-28 an erroneous interpretation of the law by recommending its reversal for the years prior to 1954. Rather, the Committee report gives two basic reasons for the enactment of Public Law 399: (1) ' * * * in order to provide a consistent policy for the period of the 1939 code'; and (2) ' * * * the inclusion of such capital gains in income for purposes of computing these credits under the 1939 code appears entirely reasonable'. In any event, the deficiencies were properly collected in the first instance pursuant to Rev.

Rul. 54-28; and Congress did not declare Rev.Rul. 54-28 an erroneous interpretation of the law."

We cannot agree that Public Law 399 accepted the position taken by the Commissioner as correct under the existing law, just as we could not agree with a contention that Congress did not accept the Commissioner's position as correct. We concur in the defendant's statement that Congress certainly did not purport to declare Rev.Rul. 54-28 an erroneous interpretation of the law. The Congress is well aware that its function is to legislate and not to pass upon the validity of administrative actions taken pursuant to a law it has enacted. By passing Public Law 399, Congress simply clarified its intent with respect to how it wanted section 117(c) (1) (A) applied to tax years 1952 and 1953.

It is worth noting that after the enactment of Public Law 399, Rev.Rul. 56-151, 1956-1 Cum.Bull. 382 was issued. This ruling withdrew the application of Rev.Rul. 54-28 to years subject to the 1954 Code by stating that for such years the dividends received credit was to be based upon taxable income which included net capital gains. In enacting section 1201 of the 1954 Code, Congress stated that it "is derived from section 117(c) of present law" and that "No substantial change is intended * * *." S.Rep. No. 1622, 83d Cong., 2d Sess., p. 430, U.S.Code Cong. and Adm. News 1954, p. 5073.

■ Since we find that Rev.Rul. 54-28 was not a valid interpretation of the 1939 Internal Revenue Code, because it was not consistent with the statutory language, plaintiff was entitled to the refund of the deficiency assessments irrespective of Public Law 399. Hence, plaintiff is entitled to interest on the deficiency assessments for the period of time they were held, and, inasmuch as interest on deficiencies under section 292 of the 1939 Code, 26 U.S.C.A. § 292 is assessed and "collected as a part of the tax," plaintiff is also entitled to recover the amounts it so paid, together with interest thereon.

Having determined that plaintiff was entitled to the refunds irrespective of Public Law 399, we do not reach the question of the effect of the "no interest" provision of that Act.

Similarly, we need not discuss the merits of the alternative arguments raised by both parties.

*Plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied.*

Judgment will be entered for the plaintiff together with interest as provided by law. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.