## BESSEMER SECURITIES CORPO-RATION

### v.

### The UNITED STATES.

### No. 368–61.

United States Court of Claims.

March 6, 1963.

Irving H. Bull, New York City, for plaintiff. Dunnington, Bartholow & Miller, New York City, were on the brief.

George Willi, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

DAVIS, Judge.

The plaintiff, a personal holding company during the years here involved, seeks to recover an alleged overpayment of personal holding company surtax for 1951 in the amount of $646,417.92, together with interest. Section 500 of the Internal Revenue Code of 1939 imposes a heavy surtax, in addition to the income taxes imposed by Chapter 1, upon the undistributed subchapter A net income [1] of every personal holding company. This tax was designed to discourage use of the so-called "incorporated pocketbook" to avoid the graduated surtax rates imposed on individuals by Section 12, by forcing current distributions to shareholders of corporations meeting the statutory definition of a "personal holding company." Woodbury Farms & Realty Corp. v. United States, 278 F.2d 333, 149 Ct.Cl. 824 (1960). In computing the amount of the undistributed subchapter A net income of a personal holding company upon which this surtax is to be levied, a deduction (called a credit in the Code) is allowed from the annual income subject to the surtax for the amount of dividends that the company pays within the taxable year. When, in a given year, the total dividends paid exceed the holding company's subchapter A net income,

---

1. Subchapter A is that part of chapter 2 (additional income taxes) of the 1939 Code which imposes a surtax on personal holding companies.

the excess may be carried over and used as a dividends-paid deduction in the following year.[2]

- The sole controverted issue pertains to the amount of the dividend credit carry-over from 1950 to 1951. Plaintiff, in calculating its 1951 personal holding company surtax liability, claimed a dividend credit carry-over from 1950 in the amount of $728,327.04, based on the following computation:

| | |
|---|---|
| Net income for 1950 | $4,202,189.89 |
| Less—capital gains | 890,867.82 |
| Net income subject to personal holding company surtax | $3,311,322.07 |
| Less—federal and foreign income taxes paid | 189,649.11 |
| Subchapter A net income [according to plaintiff] | $3,121,672.96 |
| Dividends paid in 1950 | 3,850,000.00 |
| Dividend carry-over to 1951 [according to plaintiff] | $ 728,327.04 |

The Internal Revenue Service did not question the payment of the dividends in 1950. But it did deny the propriety of a dividend credit carry-over from a year (1950) in which taxpayer received both ordinary income and capital gains, and paid dividends that were in excess of its ordinary income but less than the sum of its ordinary income and the excess of its net long-term capital gains over net short-term capital losses (i. e., its capital gains). This denial was grounded on the position that (i) under Section 505 of the Code (footnote 2, supra) capital gains are not allowable deductions in the computation of subchapter A net income, (ii) therefore the dividends paid in 1950 (which were partially out of capital gains) did not exceed the company's Subchapter A net income for 1950, and (iii) accordingly, there could be no dividend carry-over from 1950 to 1951.

Plaintiff paid the deficiency, filed a claim for refund, and brought this suit to recover the amounts paid, with interest. It argues that when tax liability is determined under Section 117(c) (1) of the

2. The definition of undistributed subchapter A net income is obtained by combining portions of various sections of the Code. Insofar as relevant, these sections are as follows:

"§ 504. *Undistributed subchapter A net income*

"For the purposes of this subchapter the term 'undistributed subchapter A net income' means the subchapter A net income (as defined in section 505) minus—

"(a) The amount of the dividends paid credit provided in section 27(a) * * *.

\* \* \* \* \*

"§ 505. *Subchapter A Net Income*

"For the purposes of this subchapter the term 'Subchapter A Net Income' means the net income with the following adjustments:

"(a) Additional deductions.

"There shall be allowed as deductions—

"(1) Federal income, war-profits, and excess-profits taxes paid or accrued during the taxable year to the extent not allowed as a deduction under section 23; but not including the tax imposed by section 102, section 500, or a section of a prior income-tax law corresponding to either of such sections.

\* \* \* \* \*

"§ 27. *Corporation dividends paid credit*

"(a) Definition in general.

"As used in this chapter with respect to any taxable year the term 'dividends paid credit' means the sum of:

"(1) The basic surtax credit for such year, computed as provided in subsection (b);

"(2) The dividend carry-over to such year, computed as provided in subsection (c);

\* \* \* \* \*

"(b) Basic surtax credit.

"As used in this chapter the term 'basic surtax credit' means * * *:

"(1) The dividends paid during the taxable year * * *.

\* \* \* \* \*

"(c) Dividend carry-over.

"There shall be computed with respect to each taxable year of a corporation a dividend carry-over to such year from the two preceding taxable years, which shall consist of the sum of—

\* \* \* \* \*

"(2) The amount, if any, by which the basic surtax credit for the first preceding taxable year exceeds the Subchapter A net income for such year. In the case

1939 Code,[3] as it was here, capital gains must be deducted from net income, in computing subchapter A net income, in order to effectuate the Congressional policy (as expressed in Section 117(c)) of taxing capital gains at a maximum rate of 25 percent. Under Section 117(c) (1), adopted in 1942, Congress permitted personal holding companies (and corporations generally) to choose, in lieu of paying the special surtax on their capital gains, to have those gains taxed at the normal capital gains rate of 25%, leaving only the companies' ordinary income taxable at the higher surtax rates. Prior to 1942, the capital gains of personal holding companies were surtaxed at the same high rate as ordinary income. Plaintiff, which had large capital gains, was taxed under Section 117(c) (1) in both 1950 and 1951.

Since the dividend carry-over credit established for a personal holding company cannot come into being in this case unless the dividends paid in the first year exceeded the company's "subchapter A net income" for that year (see Section 27 (c) (2), footnote 2, supra), the crux of the textual problem is the meaning to be given the words "net income" as they appear in Section 505—"the term 'Subchapter A Net Income' means the net income with the following adjustments"—

none of the enumerated adjustments being a deduction for the amount of capital gains realized. Plaintiff urges that such an adjustment is nevertheless required by Section 117(c) when computing the amount of the dividend carry-over[4]; we are told that only if "net income" is construed, for purposes of the dividend carry-over, to mean "net *ordinary* income" will full effect be given to the Congressional intent which motivated the extension of alternative tax treatment, at lower rates, to capital gains realized by personal holding companies.

We do not accept this argument. Before the 1942 addition of Section 117(c), "subchapter A net income", as used in Section 505, undoubtedly included capital gains as well as ordinary income, for under the 1939 Code "net income" is defined as "the gross income computed under section 22 [the general provision defining gross income, including capital gains], less the deductions allowed by section 23 [the general provision for deductions from gross income]" (Section 21(a)). See Pitcairn Co. v. United States, 180 F.Supp. 582, 588, 148 Ct.Cl. 713, 721 (1960). Section 117(c) (1) does not purport to make any change in this definition of "net income" or to modify the general coverage of "subchapter A net income." On the contrary, aside

---

of a preceding taxable year referred to in this subsection, the Subchapter A net income shall be determined as if the corporation was, under the law applicable to such taxable year, a personal holding company."

3. "§ 117. *Capital gains and losses*
\* \* \* \* \*
"(c) Alternative taxes. (1) Corporations.
"If for any taxable year the net long-term capital gain of any corporation exceeds the net short-term capital loss, there shall be levied, collected, and paid, in lieu of the tax imposed by sections 13, 14, 15, \* \* \* and 500, a tax determined as follows, if and only if such tax is less than the tax imposed by such sections:
"(A) A partial tax shall first be computed upon the net income reduced by the amount of such excess, at the rates

and in the manner as if this subsection had not been enacted. \* \* \*
"(B) There shall then be ascertained an amount equal to 25 per centum of the excess of the net long-term capital gain over the net short-term capital loss. \* \* \*
"(C) The total tax shall be the partial tax computed under subparagraph (A) plus the amount computed under subparagraph (B)."

4. This problem does not arise with respect to the computation of subchapter A net income of the current taxable year where the alternative provisions of Section 117 (c) (1) are used, for under those provisions the net income is first reduced by the amount of the capital gains, which are taxed at 25 percent, while a partial tax, computed in the normal manner, is levied on the reduced net income.

from explicitly permitting the exclusion of capital gains from the net income of the *current* taxable year, it requires that a partial tax be computed in the same manner as if it had not been enacted; no reference whatever is made to the dividend carry-over for personal holding companies or to the general make-up of "subchapter A net income." Nor is there any indication, within the four corners of Section 117(c) (1), that those provisions of the personal holding company surtax which are not expressly or necessarily touched by the new section are nevertheless to be altered to accord with a presumed intent of Congress, in enacting the section, to be lenient across-the-board with capital gains. As this court and the Third and Eighth Circuits have held, the tax imposed under Section 117(c) (1) is separate and distinct from the personal holding company surtax (and certain other income taxes imposed under other provisions of the Code). If a taxpayer falls within Section 117(c) (1), the tax levied thereunder is *"in lieu"* of these other taxes. Woodbury Farms & Realty Corp. v. United States, supra, 278 F.2d 333, 335–36, 149 Ct.Cl. 824, 828–29 (1960); Merrill v. United States, 105 F. Supp. 379, 381, 383, 122 Ct.Cl. 566, 575–76, 578 (1952); Delaware Realty & Investment Co. v. Commissioner, 234 F.2d 911, 913, 914–15 (C.A.3, 1956); ARC Realty Co. v. Commissioner, 295 F.2d 98, 106 (C.A.8, 1961). The tax under Section 117(c) (1) is not an integral part of the personal holding company surtax but rather a true alternative tax separately imposed without modifying the surtax provisions. The other Code provisions come into play, in computing the alternative tax, only to the extent and in the manner specified by Section 117(c) (1). That section says, in part, that "[a] partial tax shall * * * be computed upon the net income reduced by the amount of * * * [capital gains], at the rates and *in the manner* as if this subsection had not been enacted" (emphasis added). Thus, to the extent that tax-imposing sections other than Section 117(c) (1)— such as the personal holding company surtax imposed by Section 500—are invoked, they are to continue to operate as if Section 117(c) (1) did not exist.

This was the basis for the ruling adverse to the taxpayer by the Third Circuit, deciding the question now before us, in Delaware Realty & Investment Co. v. Commissioner, supra, 234 F.2d at 914–15 (affirming on this issue, but reversing on another, a decision by the full Tax Court, 25 T.C. 51):

"  *  *  *  the tax levied under Section 117(c) is a separate and distinct tax rather than an aggregate of Section 500 and other taxes. Therefore, the statutory details of * * * [Section 117(c) (1)] do not affect the self-sufficient statutory scheme of Subchapter A for computing personal holding company surtax income. The Commissioner properly ruled that for dividend carryover purposes petitioner's Subchapter A net income must be calculated under that subchapter without reference to Section 117."

We are in accord with this holding. Following what this court said in Pitcairn Co. v. United States, supra, 148 Ct.Cl. at 721, 180 F.Supp. at 588, we think it quite clear from the language chosen by the draftsmen of the Code and of Section 117(c) (1) that they intended net income, and thus subchapter A net income as well, to continue to include net capital gains unless Congress expressly or necessarily prohibited such an inclusion. Cf. Helvering v. Bliss, 293 U.S. 144, 147–150, 55 S.Ct. 17, 79 L.Ed. 246 (1934).

We cannot agree with taxpayer's response that in this instance, despite the guidance of the literal language of the Code, capital gains *must* be excluded from subchapter A net income in order to fulfill the Congressional purpose in adding Section 117(c) (1). When that provision is used for a particular taxable year, it deals only with the taxation of capital gains earned in that year, not with the gains or income of later or earlier years. Inclusion of capital gains

in subchapter A net income decreases the potential amount of the dividend carry-over to subsequent tax years, to be sure, but it does not subject capital gains to a rate of taxation in excess of 25 percent. When the alternative provisions apply, capital gains earned during the tax year by a personal holding company, and not distributed to its shareholders as dividends, are taxed only at the rate of 25 percent, rather than at the higher personal holding company surtax rates. This is the direct result of the application of the alternative tax provisions to corporations having capital gains, and in no way depends upon the amount of the dividend carry-over from the prior year. The dividend carry-over is significant only in determining the amount of the partial tax on ordinary net income in the later year. If capital gains are excluded from plaintiff's subchapter A net income for the purpose of determining the amount of the dividend carry-over, the effect is to allow a portion of its ordinary net income for the later year to be retained free of the personal holding company surtax, because of distributions of capital gains in the prior year which can be used to offset the ordinary income of the later year. On the other hand, if the defendant prevails, these capital gains cannot be carried forward to offset the ordinary income of the later year. In other words, as we see it, Section 117 (c) (1), which is directed to the taxation of capital gains during the particular current tax year, has no necessary connection with the problem of balancing capital gains against ordinary income in another year. So far as that section is concerned, it would be compatible for Congress to continue (for personal holding company purposes) to confine consideration of capital gain distribution to an annual basis, although the dividend carry-over would permit ordinary income distributions to be balanced out over more than one year. Here, as in many other areas, Congress could and did choose to apply the annual accounting concept strictly. It gave no signal that the one measure of relief it adopted for personal holding company capital gains of the current year was to be extended, beyond the terms of the new section, to a more general leniency toward such capital gains in all their aspects.

It is true that allowing a personal holding company to off-set ordinary income by capital gains realized and distributed in a prior year, as plaintiff suggests, would not defeat the revenue-protecting intent which prompted the personal holding company legislation. Individual taxpayers would still be unable to escape income taxes on ordinary income by channeling a portion of their income into "incorporated pocketbooks," for the desired offset would occur only to the extent that capital gains had been distributed as dividends in a prior year, and these distributions would, of course, have been taxed to the recipients as ordinary income. Indeed, plaintiff could have obtained a similar result here by simply delaying payment of the dividends in question until 1951, for the basic surtax credit allowed by Section 27(b) (1) is phrased in terms of "[t]he dividends paid during the taxable year * * *"; it makes no distinction as to the source of the earnings and profits from which dividends are paid. But it is far from enough to recognize that plaintiff's interpretation would not open great avenues of escape from individual income taxes which the personal holding company device was designed to foreclose. To hold for plaintiff we would have to say that the normal meaning of the words used in the surtax provisions—particularly "net income"—must necessarily be discarded for a broader reading in order to fulfill the objectives of Section 117(c) (1). That we cannot do, as we have already pointed out, because the defendant's position is at least equally consonant with the immediate purpose of the section to tax current capital gains at the lower rate. There is no conflict between that position and the revealed aim of Section 117(c) (1).

The history of the decisions under Section 117(c) (1) shows that the courts have not been moved to depart from ordi-

nary tax conceptions, where such a departure is not *required* by the section, by appeals on behalf of the Government to protect the revenue against excessive tax avoidance. See Delaware Realty & Investment Co. v. Commissioner, supra, 234 F.2d 911 (C.A.3, 1956); Pitcairn Co. v. United States, 180 F.Supp. 582, 148 Ct. Cl. 713 (1960); Woodbury Farms & Realty Co. v. United States, 149 Ct.Cl. 824, 828–829, 278 F.2d 333, 835–336 (1960); ARC Realty Co. v. Commissioner, 295 F.2d 98, 106 (C.A.8, 1961). The postulate of the decisions has been that the statutes must be applied as written, unless the basic purpose of Section 117 (c) (1) would be undermined. By the same token, a taxpayer's complaint that the Code provisions, as written, could lead to certain incongruities should be unavailing if, as here, those results would not necessarily eat into the core of Section 117(c) (1).[5]

Moreover, the course of legislative consideration in this field, like the judicial history, indicates both that Congress has not had a dominating policy of over-all leniency to capital gains and also that possible incongruity or disharmony should be left to be cured by Congress not the courts. Many changes have been made from time to time, in piece-meal fashion, and there has not been at any one moment a coordinated whole in which all loose ends are tied and gaps closed. This history began when the conception of the personal holding company was introduced by Section 351 of the Revenue Act of 1934, 48 Stat. 680, to implement the preexisting sanction against undue retention of earnings by corporations generally (subsequently Section 102 of the 1939 Code). At that time, this general surtax covered capital gains as well as ordinary income, and in the new personal holding company provisions Congress also required that capital gains, in addition to ordinary income, be taxed at the higher rates. In 1936, Congress added another device to force distribution, the general undistributed profits surtax (Section 14 of the Revenue Act of 1936, 49 Stat. 1648), and in that connection provided a dividend credit carry-over (Section 27 of the 1936 Act). This dividend credit carry-over was not adopted for personal holding companies until 1938 (Section 405(a) of the Revenue Act of 1938, 52 Stat. 447). During this period, net long-term capital gains continued to be treated as ordinary income. In 1942, Congress enacted Section 117 (c) (1) of the 1939 Code which for the first time allowed personal holding companies to have their capital gains taxed at lower rates but, as we have pointed out, did not concomitantly change the dividend credit carry-over provision so as to indicate that capital gains distributed to the stockholders could be carried over. Meanwhile, the general surtax on excessive retention of corporate earnings (Section 102) still continued to tax capital gains at the same rate as ordinary income. It was not until 1951, nine years after it had made this change for personal holding companies, that Congress eliminated net long-term capital gains from this general surtax (Section 315(a) of the Revenue Act of 1951, 65 Stat. 452).

5. Our decision in Merrill v. United States, 105 F.Supp. 379, 122 Ct.Cl. 566, (1952), is not to the contrary. In that case we held that the then effective limitation— "[t]he tax imposed by this section [12] and section 11 [the surtax and normal tax on individual taxpayers, respectively] * * * shall in no event exceed in the aggregate 90 per centum of the net income of the taxpayer for the taxable year"— applied to the ordinary net income, rather than to net income including capital gains. That ruling was based on the fact that the alternative tax imposed by Section 117(c) (2) on individuals required the computation of a partial tax, under Sections 11 and 12, on the net income reduced by the amount of capital gains, as if the alternative taxing provision had not been enacted. Thus, the *necessary* operation of Section 117 was to make the limitation applicable solely to the ordinary net income when computing the partial tax. The decision cannot be read as holding that Section 117 acts to exclude capital gains from net income in instances where there is no statutory mandate for such an exclusion. See, particularly, Pitcairn Co. v. United States, supra, 180 F.Supp. 582, 148 Ct.Cl. 713 (1960).

Finally, in the 1954 Code, Congress specifically provided for the very change in the scope of the dividend carry-over (for personal holding companies) which plaintiff says crept into the law, by implication, in 1942.[6]

For us, the teaching of this checkered Congressional history is that the field is peculiarly one in which Congress undertook, every few years, to refine its handiwork in the light of experience, and therefore that the courts should leave the carpentering and the patching to legislative hands. Our responsibility is to ascertain, as best we can, what was the effect Congress sought to achieve at the time it enacted Section 117(c) (1) in 1942. It is not our function to remold pre-existing law to fit more recent legislative pronouncements, based as they may be on increased experience or developments in policy, as to the most beneficial solution to the problem.

The plaintiff's petition raises one other issue—the erroneous inclusion in plaintiff's 1951 taxable income of a $13,325 distribution from Transamerica Corporation—which defendant concedes, on the basis of Erburu v. Commissioner, 23 T.C. 820 (1955) (acquiescence, 1958-1 C.B. 4), was not a dividend. Plaintiff is therefore entitled to prevail on this point.

The result is that the plaintiff can recover only the portion of the personal holding company surtax for 1951 that is attributable to the inclusion in income of the distribution from Transamerica, with interest as provided by law; plaintiff's motion for judgment on the pleadings is granted to this extent and the amount of recovery will be determined pursuant to Rule 38(c). Otherwise, the plaintiff's motion is denied, the defendant's cross-motion is granted, and the petition is dismissed.

JONES, Chief Judge, and DURFEE, and LARAMORE, Judges, concur.

---

6. Plaintiff emphasizes that the Senate Finance Committee report, in its comments on Section 564 of the 1954 Code— which together with Section 545 expressly makes capital gains deductible from taxable income ("net income" under the 1939 Code) in computing the dividend carry-over—did not include the deductibility of capital gains for this purpose in its brief summary of the "principal changes" being made in this area by the new Code. S.Rep. No. 1622, 83d Cong., 2d Sess. 326, U.S.Code Cong. & Admin. News 1954, p. 4621. In view of the number of changes in the carry-over provision, however, we find little significance in this ambiguous omission—assuming the doubtful point that such a late expression could have a bearing on the reach of Congressional action in 1942. Cf. Fogarty v. United States, 340 U.S. 8, 13–14, 71 S.Ct. 5, 95 L.Ed. 10 (1950).