LITCHFIELD SECURITIES CORPORA-TION, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 81, Docket 28290.

United States Court of Appeals Second Circuit.

Argued Oct. 23, 1963.

Decided Dec. 5, 1963.

Joseph F. Monaghan, McCanliss & Early, New York City (John F. Walsh, New York City, of counsel), for plaintiff-appellant.

Robert Arum, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

This appeal is by a personal holding company from an order of Judge Dawson in the Southern District of New York, dismissing its complaint in a suit for refund of a tax on undistributed personal holding company income. In determining the amount of such income, upon which severe taxes are imposed, § 545(b) (5) of the Internal Revenue Code of 1954 permits deduction of net long-term capital gains [1] after reduction of these by federal income taxes attributable to them. This suit requires interpretation of the statutory direction for calculating how much tax is "attributable" to the capital gains.

■ Special provision for the taxation of personal holding companies began with § 351 of the Revenue Act of 1934, 48 Stat. 751. The object was "to devise a tax which would be levied automatically against corporations coming within the definition * * * without the necessity of proving a *purpose* of avoiding income taxes on the shareholders." 7 Mertens, Law of Federal Income Taxation, § 40.02 (1956). The device used by Congress was a high tax rate on "Undistributed personal holding company income," this "pressure" rate being intended "not so much to produce revenue as to cause an abandonment of the use of personal holding companies * * *" Id. § 40.03. The definitions of "undistributed personal holding company income" have varied. Section 545(a) of the 1954 Code, here applicable, defines this as "the taxable income of a personal holding company adjusted in the manner provided in subsection (b), minus the dividends paid deduction as defined in section 561."

Three adjustments provided in § 545 (b) for determination of undistributed personal holding company income are important in this case. Paragraph (1) allows deduction of "Federal income and

---

1. Since the taxpayer here had no short-term capital losses, we shall sometimes refer, as we do in this instance, simply to Litchfield's net long-term capital gains rather than use the full statutory phrase —"the excess of the net long-term capital gain * * * over the net short-term capital loss."

excess profits taxes"; this is because amounts paid out in taxes do not remain in the corporate coffers, enriching the stockholders while escaping the graduated personal tax rates. Paragraph (3) disallows "the special deductions" for intercorporate dividends received, provided in various sections of the Code; allowance of any such deduction would frustrate one of the prime purposes of the tax, namely, to prevent what in substance is dividend income of individuals from escaping surtaxes. Paragraph (5) reads as follows:

"(5) Long-term capital gains.— There shall be allowed as a deduction the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year, minus the taxes imposed by this subtitle attributable to such excess. The taxes attributable to such excess shall be an amount equal to the difference between—

"(A) the taxes imposed by this subtitle (except the tax imposed by this part) for such year, and

"(B) such taxes computed for such year without including such excess in taxable income."

The rationale of this is that, the capital gains tax rate on individuals being no higher than it is on corporations, the stockholder derives no tax advantage from realization of such profits through the corporation, but that, since § 545(b) (1) already provides for deduction of all federal income taxes paid, the corporation would be permitted in effect to deduct the amount of its capital gains tax twice unless the deduction was reduced by the taxes "attributable" to such gain as defined in the second sentence of § 545(b) (5), the subject of this controversy.

For 1957 the taxpayer, Litchfield Securities Corporation, reported taxable income of $51,153.36, as follows:

INCOME:

| | |
|---|---|
| Dividends from Domestic Corporations ....$249,920.48 | |
| Dividends from Foreign Corporations .....$ 10,650.00 | |
| Net Long Term Capital Gain .............$ 48,410.14 | |
| Total Income ...................... | $308,980.62 |

DEDUCTIONS:

| | |
|---|---|
| Salaries and Other Expenses .............$ 45,394.85 | |
| Deduction for Dividends Received ........$212,432.41 | |
| Total Deductions .................. | $257,827.26 |
| TAXABLE INCOME ....................... | $ 51,153.36 |

On this it computed its income tax as $12,925.51. It did this, under the "Alternative tax" provision of § 1201(a), by applying to the net long-term capital gains, $48,410.14, a 25% tax rate, resulting in a tax of $12,102.54, and adding "a partial tax" on "the taxable income reduced by" the net long-term capital gains, to wit, $2,743.22, computed at the 30% rate that would apply to corporate income in that range, or $822.97. Although admitting that it was a personal holding company, Litchfield reported no additional liability for tax on undistributed personal holding company income.

The Commissioner determined that Litchfield had undistributed personal holding company income of $10,352.66 on which a personal holding company tax of $8,599.76 was due. Having paid this with interest and having been denied a

refund by the Commissioner, Litchfield sued the United States for a refund in the District Court.

■ The Commissioner arrived at his determination of deficiency by the following computation:

| | |
|---|---|
| Taxable Income for 1957 .......................... | $ 51,153.36 |
| Adjustments Required Under Section: | |
| 545(b)(1)—Corporate Income Taxes for the Year 1957 . | ($ 12,925.51) |
| 545(b)(3)—Disallowance of dividends received deduction allowed to Taxpayer in Computing Corporate Income Taxes ................................ | $212,432.41 |
| 545(b)(5)—Net Long Term Capital Gain minus Taxes Attributable thereto: | |
| Net Long Term Capital Gain ..............$48,410.14 | |
| *Less: Taxes attributable thereto* ..........*$12,102.54* | *($ 36,307.60)* |
| Taxable Income as Adjusted Under Section 545(b) .... | $214,352.66 |
| Less: Dividends Paid Deduction as Determined Under Section 561 ................................ | ($204,000.00) |
| TOTAL UNDISTRIBUTED PERSONAL HOLDING COMPANY INCOME AS DETERMINED UNDER SECTION 545 .......... | $ 10,352.66 |

———◆———

The dispute relates to the item of $12,-102.54 determined as taxes attributable to net long-term capital gains under § 545(b) (5) which we have italicized; Litchfield asserts this should be only $1,-641.81. Since the difference of $10,460.-73 between the Commissioner's figure and Litchfield's exceeds the amount of undistributed personal holding company income which the Commissioner claimed, it follows that if Litchfield were right in this assertion, it would also have been right in reporting no personal holding company tax liability. We agree with Judge Dawson's well considered opinion that Litchfield was wrong.

The last sentence of § 545(b) (5) defines the tax attributable to net long-term capital gain as the difference between two numbers, "(A) the taxes imposed by this subtitle (except the tax imposed by this part) for such year, and (B) such taxes computed for such year without including such excess [capital gain] in taxable income." The Commissioner and Litchfield agree that here "(A)" is $12,-925.51. The issue thus comes down to

the determination of "(B)." Section 63 (a) defines "taxable income" as "gross income, minus the deductions allowed by this chapter * * *" Going to Litchfield's tax return with this definition in hand, the Commissioner found that "taxable income" was $51,153.36, from which he excluded "such excess," i. e., the net long term capital gains of $48,410.14, resulting in a reconstructed taxable income of $2,743.22. The tax thereon would be $822.97, which the Commissioner determined to be the "(B)" figure. (A) minus (B) thus equalled $12,102.54. As is apparent, this was, in substance, the same process used by Litchfield in computing the alternative tax under § 1201(a), and the sum determined by the Commissioner as "[t]he taxes attributable to such excess" was identical with the 25% tax on capital gains provided by § 1201(a) (2). In a case like this, the Government's position thus is simply that "The taxes attributable to such excess" under § 545(b) (5) are the same as the 25% tax levied thereon by § 1201 (a) (2). Although this result does not

seem unreasonable, it does arouse wonder why, if that was the purpose, so elaborate a process must be performed and so many words used to describe it. The Government has an answer for this puzzlement; we will state it later.

Litchfield's position that the tax attributable to the net long-term gains was only $1,641.81 rests on the basis that if the net long-term gains had not been realized, taxable income would have been $32,276.34 rather than $2,743.22, with a resulting tax of $11,283.70. It defends this position by reading "(B)" to require recomputation of taxable income for the year as if no capital gain had been realized, rather than mere reduction of the already ascertained taxable income by excluding the amount of the capital gain. This distinction becomes important for the reason that if Litchfield had realized no capital gain during the year, it would not have been entitled to so large a dividends-received deduction in the computation of its taxable income. For the General Rule governing this deduction, announced in § 243(a) of the Code, whereby a corporation may deduct 85% of the amount received as dividends from domestic corporations, is qualified by § 246(b) (1) so that, with an exception not here material, such deduction may not exceed 85% of the taxable income (computed without regard to the dividend received deduction). Since, in the absence of the net long-term capital gains, taxable income before the dividends received deduction would have been only $215,175.63,[2] the deduction would have been limited to 85% of that amount, or $182,899.29, rather than the $212,-432.41 actually taken—with a corresponding increase in taxable income and tax thereon. In ordinary English the taxpayer's position is that to the extent that its net long-term capital gains simply enabled it to get the advantage of

the full dividend received deduction, no taxes were attributable to the gains; its argument is that if taxes are to be computed "without including" capital gains, the gains must be excluded from every phase of the computation of taxable income.

As is usual in tax cases, each side asserts that its construction accords with the "plain meaning" of the statute and that its adversary's is in violent contradiction thereof. Although we would not think the latter accusation to be deserved here as to either party, the palm for the closer approach to the letter must go to the Commissioner. "Taxable income" is the gross income "minus the deductions allowed by this chapter," and $212,432.-41 of dividends received deductions were in fact "allowed." Section 545(b) (5) (B) did *not* say "such taxes as they would have been computed for such year if such excess had not existed"—which, we diffidently suppose, would be a suitable rendering of Litchfield's position into tax English. Litchfield's claim also seems inconsistent with what we know to be the position of Congress on a related matter. By the Act of January 28, 1956, 70 Stat. 8, dealing with taxable years beginning after December 31, 1951, and before January 1, 1954, Congress directed, *inter alia*, that the exclusion of the excess of net long-term capital gains over net short-term capital losses from net income in the computation of the "partial tax" provided in § 117(c) (1) (A) of the 1939 Code as amended by 56 Stat. 843 (1942) (the equivalent of § 1201(a) (1) of the 1954 Code), should not reduce the dividends received credit. The Internal Revenue Service adopted this as its policy for years governed by the 1954 Code, Rev.Rul. 56–151, 1956–1 Cum.Bull. 382, subsequently embodied in Treas.Reg. § 1.1201–1, and the Court of Claims later held this construction to have been re-

2. The computation is:

| | |
|---|---|
| Total Income as Reported .. | $308,980.62 |
| Less: Net Long Term Capital Gain ............ | 48,410.14 |
| | $260,570.48 |

| | |
|---|---|
| Less: Salaries and Other Expenses .............. | 45,394.85 |
| | $215,175.63 |

quired by the 1939 Code apart from the 1956 legislation. Pitcairn Company v. United States, D.C., 180 F.Supp. 582 (1960). The theory advanced by Litchfield as to § 545(b) (5) (B) has thus been authoritatively rejected as to § 1201 (a) (1); if it had not been, Litchfield could not profit from its argument in any event since the very computation here relied on to increase "(B)" would have increased "(A)" by the same amount.[3]

■ Relevant legislative material concerning the 1954 Code reinforces our conclusion as to the correctness of the Government's position. Under the 1939 Code as amended in 1942, the excess of net long-term capital gains over net short-term capital loss had been specifically excluded from the personal holding company tax where the alternative tax provision of § 117(c) (1) applied, yet § 505(a) (1) allowed deduction from personal holding company income of all federal income taxes paid. The House Report which accompanied the bill, H. R. 8300, ultimately enacted as the 1954 Code, announced that in this respect the bill "prevents the double benefit which may be obtained under existing law," 1954 U.S.Code Cong. & Adm.News, Vol. 3, p. 4082. H.R. 8300 accomplished this by excluding from the deduction for taxes in § 545(b) (1) "the alternative capital gains tax determined under Section 1201(a) (2)," while allowing deduction of the entire excess of net long-term capital gain over net short-term capital loss, § 545(b) (5). Litchfield concedes that the House bill would have led to the result here reached by the Commissioner. The language as enacted represents a change made by the Finance Committee

of the Senate. Its report stated that "The committee made only technical changes in this section [§ 545]. These include * * * provision for the deduction of any alternative tax paid as a tax rather than as part of the capital gain deduction * * *" 1954 U.S. Code Cong. & Adm.News, Vol. 3, p. 4707. The more detailed statement relating to § 545 said:

"Under present law, the alternative capital gains tax is imposed in lieu of the income and personal holding company taxes. This adjustment reaches the same result. A technical amendment by your committee to the House bill allows the capital gains tax as a deduction in computing undistributed personal holding company income but reduces the amount of the deduction for capital gains by the taxes attributable to such gains." *Id.* 4961.

The need for the "technical amendment," using so many more words than the House bill, arose, as the Government tells us, from the fact that the alternative capital gains tax provided by § 1201(a) (2) was applicable only if that tax was less than a tax otherwise computed, and it would not be less when deductions exceeded income other than the excess of net long-term capital gains over net short-term capital losses. In such cases —rather rare, one would suppose, for personal holding companies—the House bill would have had the effect of still allowing deduction of the entire amount of the gain plus the entire tax. We think it plain from the history that in the effort to prevent the double deduction which the House bill would have per-

---

3. See also Delaware Realty & Investment Co. v. Commissioner, 234 F.2d 911 (3 Cir. 1956), and Bessemer Sec. Corp. v. United States, 314 F.2d 521 (Ct.Cl.1963). The issue in these cases, arising under the 1939 Code, was whether the taxpayers, both personal holding companies, were entitled to a credit for a carry-over of dividends paid in excess of "Subchapter A net income" (personal holding company net income) in a prior year. The taxpayers' position depended on the validity of their assertion that capital gains excluded from Subchapter A net income for the purpose of the tax under § 117(c) (1) must be excluded from such income for all purposes. Both courts held that computation of the capital gain tax at the alternative rate provided by § 117(a) (1) rather than at the Subchapter A rate did not reduce the amount of Subchapter A net income for calculating the dividend paid.

mitted in these unusual cases, neither the Senate nor the House by acquiescing in the Senate's amendment had any purpose to enlarge the deduction to which the House bill confined personal holding companies in the usual case. Litchfield's claim that such a resort to legislative history runs counter to C. I. R. v. Acker, 361 U.S. 87, 93, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959), is unsupportable. In cases too numerous for citation the Supreme Court has looked to such history for help in choosing between two readings of a statute which were equally permissible as a matter of language; here we are taking the smaller step of utilizing the history only to make certain that in applying the strict letter of what Congress said we are not doing violence to what it meant.

Affirmed.